NO. 81-35

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE BAR OF MONTANA, an
unincorporated associated,

              Petitioner,

vs.

HON. PEG KRIVEC, Commissioner of
Political Practices of the State of
Montana, et al.,

              Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioner:

        W. William Leaphart, Helena, Montana
        W. William Leaphart argued, Helena, Montana
        Hughes, Bennett, Kellner and Sullivan, Helena, Montana
        John Alke argued, Helena, Montana

    For Respondents:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Jack Lowe argued, Helena, Montana

For Intervenor: James H Goetz, Bozeman, Montana.

              Submitted: March 27, 1981

              Decided: August 20, 1981

Filed: AUG 20 1981

Thomas J. Kearney
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

State Bar of Montana, an unincorporated association instituted by this Court, [(1975), 165 Mont. 1, 530 P.2d 765] filed its petition in an original proceeding in this Court, seeking a declaratory judgment that Initiative 85 (Title 5, Ch. 7, MCA) violates the state constitution with regard to the supervision and licensing of attorneys and further that it is unconstitutionally vague so as to deny members of the State Bar of Montana due process of law.

The respondents are the Hon. Peg Krivec, commissioner of political practices of the State of Montana, designated in the Initiative as its administrative officer, and Mike Greely as the attorney general of the State of Montana, who is charged with enforcing the provisions of the Initiative.

James H. Goetz, a Bozeman attorney, appeared as an intervenor. All parties agree that this Court has original jurisdiction of this cause under the 1972 Mont. Const., Art. 7, § 2, and under Title 27, Ch. 8, MCA, the Uniform Declaratory Judgments Act, and Title 27, Ch. 19, MCA, relating to injunctions.

We find that the petition of the State Bar of Montana raises a justiciable controversy and we assume jurisdiction for the purpose of a declaratory judgment in accordance with this opinion.

This is the second occasion on which we have issued an opinion relating to Initiative 85. In Montana Automobile Association v. Mike Greely, Attorney General, et al., Cause No. 81-45, Decided July 30, 1981, we upheld the validity of the Initiative after emending it. It is the context of the emended act that we consider here.

On its face, Initiative 85 applies to lawyers plying their trade by appearing before state and local governmental

-2-

entities on behalf of clients. The principal issues raised
by the petition of State Bar of Montana are: (1) that
Initiative 85 violates the doctrine of separation of powers
between the judicial and executive functions, and (2) that
section 2(4)(b) of the Initiative is unconstitutionally
vague.

We hold that Initiative 85, when considered as emended
in Montana Automobile Association, supra, and given the
interpretations which apply to the Initiative as hereinafter
set forth, is not an unlawful intrusion into the power of
this Court regarding attorneys, and further is not unconstitutionally
vague as claimed.

The issues of unconstitutional invasion of the judicial
power and unconstitutional vagueness are interlaced because
they relate to two subsections of the Initiative which we
will consider and discuss together.

We begin by pointing out that the State Bar of Montana
raises no objection to the application of the Initiative to
the practice of lobbying by attorneys before the legislature.
The opposition of the State Bar is directed toward "non-
legislative lobbying", as that activity is defined in section
2(4)(b), (also designated as section 5-7-102(4)(b), MCA).
That subsection states:

"(4) 'Lobbying' includes:

". . .

"(b) the practice of promoting or opposing
official action by any public official in the
event the person engaged in such practice expends
$1,000 per calendar year or more exclusive of
personal travel and living expenses."

The subsection obviously points at official action by
"any public official" and as such hinges on the definition
contained in the Initiative of a "public official." That

definition is found in section 2(3) of the Initiative (also designated as section 5-7-102(3), MCA):

> "(3) 'Public official' means any individual, elected or appointed, acting in his official capacity for the state or local government or any political subdivision thereof, but does not include those acting in a judicial or quasi-judicial capacity."

The rules applicable to judicial interpretation of initiatives are the same as those applying to legislation enacted by the legislature. State v. Dixon (1921), 59 Mont. 58, 76, 195 P. 841. Laws can be expressed only in words and such words must be reasonably and logically interpreted according to grammatical and statutory rules. State v. Fox-Great Falls Theatre Corporation (1942), 114 Mont. 52, 66, 132 P.2d 689. In construing definitions, courts will determine the meaning of the definitions as found in the legislative act. State v. Jacobson (1938), 107 Mont. 461, 464, 86 P.2d 9. The function of the court in construing the legislation is simply to ascertain and state what terms or matters are contained in the legislation. Dunphy v. Anaconda Company (1968), 151 Mont. 76, 80, 438 P.2d 660. The fundamental rule of all statutory construction is that the intention of the legislative body (or the people) controls. Matter of Senate Bill No. 23, Ch. 491, Laws of 1973, 168 Mont. 102, 104, 540 P.2d 975 (1975). It is not the function of the courts to second-guess and substitute their judgment at every turn of the road for the judgment of the legislature in matters of legislation, and the same is true in the case of direct legislation by the people via the initiative process. Fritz v. Gorton (Wash. 1974), 517 P.2d 911, 917, appeal dismissed 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208.

Clearly, the appearance by attorneys before any judicial tribunal at any level of state or local government is not to be considered lobbying under the definitions in the Act. It is in the sector of "quasi-judicial" functions that the State Bar sees vagueness and uncertainty, and in consequence, unlawful intrusion into the powers of this Court respecting attorneys.

The State Bar contends that Art. VII, § 2(3), authorizes the Montana Supreme Court to govern the "admission to the bar and the conduct of its members"; that Art. III, Section 1, establishes three distinct branches of the government-legislative, executive and judicial; that section 3 (section 5-7-103, MCA) of the Initiative provides for licensing of lobbyists by the commissioner of political practices; that section 2(6) (section 5-7-102(6), MCA) includes attorneys in the "lobbying for hire" definitions; and that the definition of nonlegislative lobbying, which we have quoted above, on its face includes the appearance by attorneys before administrative bodies in behalf of their clients. Accordingly, the State Bar contends that the Initiative, with its licensing, supervision and other provisions intrudes upon the power of this Court to regulate the conduct of attorneys in this state.

Respondents reply that the application of the non-legislative lobbying provisions to attorneys as well as other members of the public does not conflict with any rule or standard announced by the Supreme Court; that it does not impermissibly regulate the practice of law; that the power of this Court over the conduct of attorneys is not necessarily exclusive as to crimes committed by lawyers or other activities against the public interest and that in any event, the provisions of the Initiative are mutually reconcilable with the powers of this Court over attorneys.

Since lobbying under the Initiative does not include using influence in opposing official action by public officials engaged in a quasi-judicial capacity, section 2(4)(b), supra, the marked delimiting effect of that exception should be noted. Nowhere in the Initiative is the term "quasi-judicial" defined. Elsewhere in our statutes, for the purposes of the Executive Reorganization Act, a quasi-judicial function is defined in section 2-15-102(9), MCA, as follows:

> "'Quasi-judicial function' means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes but is not limited to the functions of interpreting, applying, and enforcing existing rules and laws; granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits, and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; adopting procedural rules; holding hearings; and any other act necessary to the performance of a quasi-judicial function."

That definition of a quasi-judicial function is very broad. Its use in the Executive Reorganization Act appears to be primarily for section 2-15-121, MCA. In substance for that purpose, the section provides that an agency which is allocated to a department for administrative purposes shall exercise its quasi-judicial functions, among other functions, independently of the department to which it is assigned and without the approval or control of that department.

While the definition of quasi-judicial function contained in the Executive Reorganization Act may be used as a reference point to determine the nature of such a function, we believe the better definition to be used in determining such action by "quasi-judicial" officials appears in statements from this Court. Since 1903, this Court has applied the same definition of "quasi-judicial" as is contained in Bair v. Struck (1903), 29 Mont. 45, 50, 74 P. 69, 71:

-6-

". . . . As distinguishing between acts quasi-
judicial and acts ministerial in their character,
the following definitions we think correctly state
the law:

"'Quasi-judicial functions are those which lie
midway between the judicial and ministerial
ones. The line separating them from such as
are thus on their two sides are necessarily
indistinct; but, in general terms, when the law,
in words or by implication, commits to any
officer the duty of looking into facts, and
acting upon them, not in a way which it specifically
directs, but after a discretion in its nature
judicial, the function is termed quasi-judicial.'
. . . [Citation omitted.]

"'Where a power rests in judgment or discretion,
so that it is of a judicial nature or character,
but does not involve the exercise of the functions
of a judge, or is conferred upon an officer other
than a judicial officer, the expression used is
generally "quasi-judicial"'. . . The officer may
not in strictness be a judge; still, if his powers
are discretionary, to be exerted or withheld
according to his own view of what is necessary and
proper, they are in their nature judicial."

See also, State v. Montana Livestock Sanitary Board

(1959), 135 Mont. 202, 205, 339 P.2d 487, 489; State v.

State Livestock Sanitary Board (1960), 138 Mont. 536, 538,

357 P.2d 685, 687; City of Billings v. Smith (1971), 158

Mont. 197, 207, 490 P.2d 221, 227.

We hold therefore, that when an attorney seeks to influence

a public official exercising a quasi-judicial function who is

acting in a matter or field in which the public official has

discretion, such an attorney is not engaged in lobbying under

the terms of the Initiative. This holding would not apply if

the public official were a legislator covered under section

2(4)(a) of the Initiative.

We make special note of proceedings before the Public

Service Commission. Ordinarily, the making of rules and

setting of rates in the regulation of utilities or public

carriers is considered a quasi-legislative function.

Section 2-15-102(10), MCA. Originally, the Public Service

Commission was considered to be an arm of the legislature in

the performance of its functions. However, it was included as one of the departments of the executive branch in the Executive Reorganization Act, sections 2-15-2601, -2602, MCA. The Public Service Commission is an example of an agency where quasi-legislative and quasi-judicial functions may overlap. In any event, our above-quoted definition of a quasi-judicial function also applies to proceedings before the Public Service Commission. When that Commission is engaged in a quasi-judicial function as we have defined it, attorneys acting on behalf of clients or for themselves in such proceedings are not covered by the Initiative. The discretion of setting rates is, in our opinion, the power to exercise a quasi-judicial function.

The State Bar has expressed the fear that the Initiative may also be construed to include official activities of a purely ministerial nature, such as paying filing fees to procure the recordation of deeds or other instruments. We allay those fears by stating that the purpose of the Initiative is directed toward legislative functions and not ministerial acts. Any attorney procuring the performance of a purely ministerial act by a public official, an act which could otherwise be required by mandamus, is not procuring an official to exercise a legislative function, and is not acting within the intent and purpose of the Initiative.

So construed, we do not find the Initiative as emended by this Court in Montana Automobile Association, supra, to be so vague as to be unconstitutionally uncertain, nor does it intrude on the powers of this Court to regulate the conduct of attorneys. As so construed, the Act applies equally to attorneys and nonattorneys acting in the field of nonlegislative lobbying. No reason appears why attorneys

-8-

should enjoy especial dispensation from application of the Initiative when they are acting in that field. There is an obvious public interest in the regulation and disclosure of lobbying activities. Section 17 of the Initiative places a duty upon the commissioner of political practices to promulgate rules necessary to carry out the purposes of the Initiative. Using these two opinions as guidelines, we expect that the commissioner will promulgate regulations properly applying to lobbying activities covered by the Initiative. Those regulations should apply equally to all lobbyists, including attorneys who lobby. While the commissioner has the power to suspend licenses of lobbyists, and the attorney general has power to enforce the provisions of the Initiative, none of those powers conflict with the right of this Court to supervise the conduct of the members of the Bar engaged in the practice of law. Irrespective of what may be said in this opinion or contained in the Initiative, we assert and maintain the right of this Court to supervise the conduct of the members of the Bar and we find that right and power undiminished by any provision of the Initiative.

The interpretation of the Initiative which we have set forth here was in part suggested by the State Bar, and consented to by the respondents. We find no reason at this time to exercise any injunctive power directed to the commissioner of political practices or any other official. Such action is reserved for another time, if it is ever necessary.

This opinion shall be and constitutes a declaratory judgment of this Court to which the parties will well and suitably conform themselves. No costs to any party.

_John C. Sheehy_
Justice

-9-

We concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_

_John B. Morrison_

_Fred J. Weber_
Justices