807 A.2d 812

Richard J. GMEREK and Charles I. Artz,

v.

STATE ETHICS COMMISSION and Honorable Mike Fisher, Attorney General, and Mark R. Corrigan, Secretary of the Senate of Pennsylvania, Intervenor,

Appeal of: Honorable Mike Fisher, Attorney General No. 55 Map 2000; State Ethics Commission No. 56 Map 2000; Mark R. Corrigan, Secretary of the Senate of Pennsylvania, Intervenor No. 57 Map 2000.

Supreme Court of Pennsylvania.

Argued April 30, 2001.

Decided Aug. 23, 2002.

Reargument Denied Oct. 23, 2002.

**580**

John G. Knorr, Calvin Royer Koons, Harrisburg, for Mike Fisher, Atty. Gen.

Donald Marritz, Carlisle, for Common Cause of PA.

James D. Cashel, John H. Estey, Michael D. Epstein, Philadelphia, Philadelphia, for Gmerek/Artz.

Robin M. Hittie, Vincent J. Dopko, Harisburg, for State Ethics Commission.

Stefan Presser, Phildelphia, for American Civil Liberties Union of PA.

Helene Eichenwald Loux, Linda J. Shorey, John P. Krill, Harrisburg, for Intervenor–Mark Corrigan.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### *ORDER*

PER CURIAM.

**AND NOW,** this 23rd day of August 2002, the Court being evenly divided, the order of the Commonwealth Court is affirmed.

Former Chief Justice FLAHERTY did not participate in the decision of this matter.

Chief Justice ZAPPALA files an Opinion in Support of Affirmance in which Justice CAPPY joins.

Justice CASTILLE files an Opinion in Support of Affirmance.

Justice SAYLOR files an Opinion in Support of Reversal in which Justice Nigro and Justice Newman join.

Chief Justice ZAPPALA.

## OPINION IN SUPPORT OF AFFIRMANCE

This is a direct appeal from the order of the Commonwealth Court declaring the Lobbying Disclosure Act (Act), 65 Pa.C.S. §§ 1303–1311, unconstitutional on the basis that it violates Article V, Section 10 of the Pennsylvania Constitution by infringing on this Court's exclusive authority to regulate the practice of law.[1]  For the following reasons, I would affirm.

The instant action was commenced on May 26, 1999, by the filing of a Petition for Review in the nature of a complaint for declaratory judgment filed in the original jurisdiction of the Commonwealth Court.[2,3]  The Petitioners (now Appellees), Gmerek and Artz, allege in the petition that they are members

1.  This Court has exclusive jurisdiction of an appeal from a final order of the Commonwealth Court entered in any matter which was originally commenced in said court and which does not constitute an appeal to the Commonwealth Court from another court, a district justice or another government unit.  42 Pa.C.S. § 723.

2.  The complaint named as Respondents the State Ethics Commission, the agency charged with administering and enforcing the Act, and Attorney General D. Michael Fisher, who is authorized to investigate and prosecute criminal violations of the Act. Mark R. Corrigan, Secretary of the Senate of Pennsylvania, intervened as a respondent.

3.  On May 26, 1999, Appellees also filed a request for preliminary injunction in which they sought to enjoin the implementation and enforcement of the Act prior to the effective date of August 1, 1999. Following a hearing, the Commonwealth Court denied that request. Appellees appealed that denial to this Court, but later discontinued the appeal.  Appellees subsequently filed with this Court an Emergency Application for Injunction Pending Appeal.  On July 30, 1999, we denied the Emergency Application without prejudice.

of the Pennsylvania bar who, on behalf of their clients, engage in activities which are classified as "lobbying" under the Act. They further allege that with respect to those activities, the Act unconstitutionally regulates the practice of law in violation of Article V, Section 10.[4]   Motions for summary judgment were filed by the State Ethics Commission, the Attorney General and the Appellees.   A motion for judgment on the pleadings was filed by Intervenor Corrigan.

A majority of the Commonwealth Court found the critical inquiry to be whether the activities regulated by the Act constitute the "practice of law" when performed by lawyers and not whether non-lawyers could also perform such activities.   The majority ultimately concluded that several of the provisions of the Act purport to regulate activities which, when performed by attorneys such as Appellees, constitute the practice of law.   Accordingly, the court found that those provisions conflict with Article V, Section 10 of the Pennsylvania Constitution by infringing on this Court's exclusive authority to regulate the practice of law in this Commonwealth.[5]

4.  Affidavits describing their "lobbying" activities were submitted by both Appellees when the matter was before the Commonwealth Court. Appellee Gmerek's affidavit indicates that he represents clients before the state legislature and various executive departments of the state government.   Appellee Artz also represents clients before executive departments of the Commonwealth.   That representation is described as including, *inter alia,* communications with employees of the departments before and after the adoption of regulations, and communications concerning the applicability of regulations to particular situations, as well as challenges to the constitutionality of various regulations and the giving of advice to clients regarding the administrative law process under the Regulatory Review Act and other applicable law.   He has also been retained to analyze the legality of proposed regulations.

5.  Article V, Section 10 provides, in relevant part:

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate.

. . . .

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice

However, rather than strike those specific provisions of the Act, the court declared the entire Act void pursuant to Section 1311(b) of the Act which provides:

**Severability**

**(b) Practice of law.—** If any provision of this chapter or its application to any person or circumstance is held invalid on the basis of improper regulation of the practice of law, the remaining provisions or applications of this chapter are void.

65 Pa.C.S § 1311(b). Accordingly, the court granted Appellees' motion for summary judgment and denied the remaining motions. Three members of the Commonwealth Court dissented finding that because the regulation is aimed at conduct applied to all persons who lobby, our decision in *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999), would dictate that the Act does not infringe on this Court's exclusive jurisdiction to regulate the conduct of attorneys. Respondents (now Appellants), the State Ethics Commission and the Attorney General, and Intervenor, Corrigan, then appealed that decision to this Court.[6]

The Act, which was signed into law on October 15, 1998, and made effective August 1, 1999, sets forth certain registration and reporting requirements for lobbyists and principals. In addition, the Act also prohibits certain activity by a lobbyist and provides for penalties for any violation of the Act. The stated purpose of the Act is to regulate the activities of those

shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

**6.** In reviewing an order disposing of summary judgment motions, we must determine whether the record evidences that Appellees were entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174, 176 (1999). Where, as here, the only issues involve questions of law, our scope of review is plenary. *Wodjak v. Greater Philadelphia Cablevision, Inc.*, 550 Pa. 474, 707 A.2d 214, 220 (1998).

persons employed to influence the actions of the General Assembly and the Executive Department and purports to govern any person engaged in the practice of lobbying to the exclusion of any other regulations. 65 Pa.C.S. § 1302.[7] The Act defines the term "lobbyist" as "[a]ny individual, firm, association, corporation, partnership, business trust or business entity that engages in lobbying on behalf of a principal for economic consideration" and further states that the "term includes an attorney who engages in lobbying." 65 Pa.C.S. § 1303. "Lobbying" is defined as "[a]n effort to influence legislative action or administrative action" including "(1) providing any gift, entertainment, meal, transportation or lodging to a State official or employee for the purpose of advancing the interest of the lobbyist or principal; and (2) direct or indirect communication."

Respecting the reporting requirements, the Act dictates that each lobbyist register with the Commission and provide the following information: (1) name, address, phone number and a recent picture; (2) the name, address and phone number of any principal the lobbyist represents; (3) the name, registration number and acronyms of affiliated political action

7. Section 1302 provides:

(a) **Intent.**—The Constitution of Pennsylvania recognizes the principle that all free government is founded upon the authority of the people. It further provides that the power to make law in this Commonwealth is vested in the General Assembly and the power to enforce law is vested in the Executive Department. The ability of the people to exercise their fundamental authority and to have confidence in the integrity of the process by which laws are made and enforced in this Commonwealth demands that the identity and the scope of activity of those employed to influence the actions of the General Assembly and the Executive Department be publicly and regularly disclosed.

(b) **Jurisdiction.**—The authority to regulate persons employed to influence the actions of the General Assembly and the Executive Department lies within the jurisdiction of those branches of government. To insure that the intent of this chapter is not evaded and that all such persons are regulated in a fair and equitable manner, lobbyists and the practice of lobbying shall be subject to this chapter, which shall prevail over any other regulation of professional activity when that activity constitutes lobbying. This chapter is not intended to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch of government or by any government agency. Membership in a regulated profession shall not excuse a lobbyist from compliance with the provisions of this chapter.

committees; and (4) a biennial fee of one hundred dollars ($100.00). *See* 65 Pa.C.S. §§ 1304(c) and 1310(a). The Act also demands that a lobbyist file quarterly expense reports that include: (1) the names of all lobbyists by whom the lobbying is conducted and the general subject matter or issue being lobbied; (2) a single aggregate good faith estimate of the total amount spent for personnel and office expenses related to lobbying; (3) a single aggregate good faith estimate of the total amount spent for direct and indirect communication; (4) the total costs for gifts, entertainment, meals, transportation, lodging and receptions, given to or provided to State officials or employees or their immediate families; and (5) the name and position of each State official or employee who receives an item of material value and the date of each such occurrence. 65 Pa.C.S. § 1305(b). A lobbyist must also retain all documents necessary to substantiate the required reports for a period of four years and make those documents available for inspection if requested. 65 Pa.C.S. § 1305(c).[8]

The Act also prohibits certain activities by a lobbyist. First, it prohibits any compensation that is contingent on the outcome of the lobbying activities. 65 Pa.C.S. § 1307(a). It also prohibits a lobbyist from serving as an officer on a candidate's political committee and precludes a lobbyist from requesting or accepting compensation with the understanding that any part thereof will be converted into a political contribution. 65 Pa.C.S. § 1307(b) & (c). Finally, a lobbyist is precluded from knowingly communicating false information to state officials or employees. 65 Pa.C.S. § 1307(d).

The Act also provides for penalties for noncompliance with the dictates of the Act which include: (1) notices of noncompliance; (2) administrative hearings; (3) civil penalties; (4) criminal penalties; and (5) a prohibition from lobbying for up to five years. 65 Pa.C.S. § 1309. The administration and enforcement of the Act is vested in Appellant Commission and Appellant Attorney General. 65 Pa.C.S. § 1308.

8. The Act exempts certain persons from these registration and reporting requirements. 65 Pa.C.S. § 1305(b). Those exemptions are not, however, pertinent to the current controversy.

Appellants argue that the Act, by its terms, regulates the practice of lobbying, not the practice of law, and under prior precedent of this Court, the Act should survive since it is not regulating lawyers because they are lawyers. In support thereof, they cite this Court's decision in *P.J.S. v. State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999). They also argue that the definition of "lobbying" contained in the Act does not describe the "practice of law" and, therefore, the Act does not infringe on this Court's right to regulate the conduct of attorneys. According to Appellant Corrigan, lobbying is an activity in which the fundamental element of judgment concerns the personal, political or economic interest of the party on whose behalf the lobbying is being done whereas the practice of law requires the exercise of legal judgment. He submits that while an attorney may provide legal analysis and judgment to his clients regarding a proposed piece of legislation, such activities do not constitute lobbying. Rather, he submits, it is the communication of such judgment to our legislators that comprises the act of lobbying, which, according to Appellants, is separate and distinct from the exercise of the underlying legal judgment. Appellant State Ethics Commission, similarly argues that "lobbying" does not encompass the practice of law because the activity of lobbying does not require an understanding of legal principles and/or the practiced skill of applying such principles. Appellant Fisher, adds that since a person need not be licensed to practice law to be a lobbyist, lobbying cannot therefore, be considered "the practice of law."

Appellees, on the other hand, maintain that the Act does, indeed, regulate the "practice of law" insofar as the services they provide as attorneys to their clients constitute "lobbying" as defined under the Act. Appellees claim that they are not arguing that because they are attorneys, the General Assembly cannot regulate their conduct or that all lobbying activities constitute the practice of law. Rather, they contend only that certain "lobbying" activities as that term is defined in the Act constitute the practice of law as defined by this Court in

*Dauphin County Bar Ass'n,* 465 Pa. 545, 351 A.2d 229 (1976), and *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937).

There is, of course, a presumption that lawfully enacted legislation is constitutional and the burden of rebutting that presumption is well documented:

> Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision.
>
> The presumption in favor of the constitutionality of a statute reflects on the judiciary's respect for the legislature as a co-equal branch of government. The legislature is precluded, however, from exercising powers entrusted to the judiciary. Thus, the presumption of constitutionality must give way when there is any encroachment upon the judicial power by the legislature. Indeed, it is the duty of the courts to invalidate legislative action repugnant to the constitution.

*Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568 at 571 (1997) (citations omitted).

The authority of this Court to regulate the conduct comprising the practice of law is well established. *See Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568 (1997); *Maunus v. State Ethics Commission,* 518 Pa. 592, 544 A.2d 1324 (1988); *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980). Appellants submit, however, that this Court's recent decision in *P.J.S.,* illustrates that regulations such as those at issue do not infringe on this Court's exclusive jurisdiction over the conduct of attorneys.

In *P.J.S.,* the solicitor for the City of Erie was retained via his private practice by the insurer of the City to represent certain City officials in their defense of a tort action. With the Mayor's consent, the Solicitor agreed to represent the City defendants while continuing to serve as Solicitor. That agreement, however, prompted a complaint to the Ethics Commission alleging that the Solicitor violated the conflict of interest

provisions of the Ethics Act. After concluding that the Solicitor was a public employee and therefore, within the scope of the Ethics Act's restrictions, we addressed the issue of whether the Solicitor, by virtue of his status as an attorney, was exempt from the jurisdiction of the Ethics Commission. We ultimately concluded that application of the Ethics Act to the Solicitor did not infringe on this Court's exclusive jurisdiction over the practice of law.

In arguing that the Act is constitutional because it regulates "lobbying" and not the "practice of law," Appellants in the instant matter seize on the following excerpt from our decision in *P.J.S.*:

> The exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.

*P.J.S.*, 723 A.2d at 178. In so doing, however, Appellants ignore other pertinent excerpts from that decision which reveal that our holding in *P.J.S.* was not as broad as Appellants have read it to be. Significantly, in *P.J.S.*, the Solicitor was an attorney and a public employee. The primary argument there was that his status as a member of the bar rendered him exempt from any additional professional and ethical violations. In rejecting that argument, we relied on our prior decision in *Maunus v. State Ethics Commission*, wherein we addressed the issue of whether attorneys employed by the Pennsylvania Liquor Control Board were exempt from the financial disclosure provisions of the Ethics Act by virtue of the fact that they were members of the bar. In discussing the *Maunus* decision, we noted:

> The proposition that mere status as an attorney shields one from additional regulations aimed at proscribing conduct was rejected [by the *Maunus* court]. Nor did the [*Maunus* court] find that its exclusive jurisdiction over the professional and ethical conduct of all attorneys was infringed by the

imposition of workplace regulations on persons who also happened to be attorneys. As the [*Maunus*] court so succinctly stated:

> However, notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers be constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of who may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions . . . . a lawyer who contracts his or her services to an employer is like any other employee subject to the terms and rules of that employment, provided that they are in no way inimical to the ethical standards prescribed by this Court.

*P.J.S.*, 723 A.2d at 178, *quoting Maunus*, 544 A.2d at 1326.

Our decision in *P.J.S.* did not eviscerate our prior line of cases holding that this Court has exclusive jurisdiction to regulate the conduct of attorneys. Rather, as the quote from *Maunus* reveals, the decision was limited to the situation presented therein, that being the imposition of regulations by an employer of an employee/attorney. In other words, we held that an employer could impose workplace regulations on an employee who happens to be an attorney without infringing on our constitutional authority to regulate the practice of law so long as those regulations do not conflict with the authority of this Court. *See Maunus*, 544 A.2d at 1327.

The instant matter is, however, inapposite to that presented in *P.J.S.* Here, the challenged provisions are not aimed at regulating employees. Instead, they are regulations which, although purportedly aimed at lobbying activities, in effect regulate Appellees' conduct while servicing clients in the realm of lobbying. The Commonwealth Court here correctly concluded that the focal point is not whether the provisions merely regulate the conduct of both attorneys and non-attorneys, but rather whether the Act purports to control the conduct of attorneys when engaged in the rendering of legal services to clients. *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1254 (Pa.Cmwlth.2000). Appellants argue, howev-

er, that because the activities regulated by the Act may be undertaken by individuals other than attorneys, the Act cannot be viewed as regulating the "practice of law." They also point out that the Act explicitly states that it is directed at "lobbying" activities and specifically disavowals that it is in any way intended to regulate any other professional activities. Finally, they submit that the Act does not regulate the "practice of law" because the very definition of "lobbying" contained in the Act does not encompass the exercise of legal judgment. These arguments, while tantalizing at first blush, are not persuasive.

As noted previously, the Act defines lobbying as "an effort to influence legislative or administrative action" including not only the providing of material gifts, but also any direct or indirect communication. 65 Pa.C.S. § 1303. "Legislative action" involves a myriad of actions by state officials or employees in regard to the preparation and consideration of enactments. *Id.* "Administrative action" includes an agency's proposal, consideration, promulgation or rescission of a regulation; the development and/or modification of a guideline, statement or policy; and the approval or rejection of a regulation. *Id.* "Direct communication" is defined as an effort, whether written or oral, made by a lobbyist or principal that is directed to a state official or employee for the purpose of influencing legislation. *Id.* "Indirect communication" is any effort to encourage others to take action to directly influence legislative action or administrative action. *Id.* This definition of "lobbying," under the facts of this case, clearly encompasses the practice of law as previously defined by this Court.

In *Dauphin County Bar Association v. Mazzacaro,* 465 Pa. 545, 351 A.2d 229 (1976), this Court addressed the parameters of the practice of law. Relying on *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937), we said:

Marking out the abstract boundaries of legal practice would be an elusive, complex task 'more likely to invite criticism than to achieve clarity.' The threads of legal consequences often weave their way through even casual contemporary interactions. There are times, of course,

when it is clearly within the ken of lay persons to appreciate the legal problems and consequences involved in a given situation and the factors which should influence necessary decisions. No public interest would be advanced by requiring these lay judgments to be made exclusively by lawyers. Where, however, a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgment is called for. While at times the line between lay and legal judgments may be a fine one, it is nevertheless discernible. Each given case must turn on a careful analysis of the particular judgment involved and the expertise that must be brought to bear on its exercise.

*Dauphin County Bar Association,* 351 A.2d at 233.

As previously noted, not only do Appellees provide legal analysis to their clients regarding proposed legislation that is either communicated to state officials by Appellees themselves or their clients, but they also appear before executive departments during the legislative process and discuss, *inter alia,* the applicability of certain regulations to particular situations. Such activities clearly constitute "direct" and/or "indirect communications" with state officials as those terms are defined in the Act.

In conclusion, the Act in effect regulates the conduct of attorneys engaged in the practice of law and thereby infringes on this Court's exclusive jurisdiction to regulate the conduct of attorneys. Given the explicit dictates of Section 1311(b) of the Act, the entire Act must be declared invalid. Accordingly, I would affirm the order of the Commonwealth Court granting the summary judgment motion of Appellees and denying the cross-motions for summary judgment and the motion for judgment on the pleadings.

Justice CAPPY joins in this opinion.

Justice CASTILLE.

### *OPINION IN SUPPORT OF AFFIRMANCE*

Although the points cogently made in Mr. Justice Saylor's Opinion in Support of Reversal have given me pause, I never-

theless find myself, after considered review, in a posture of affirmance. Because I have reached this conclusion for what I believe are reasons somewhat narrower than those expressed by Mr. Chief Justice Zappala in his Opinion in Support of Affirmance, I write separately.

In my view, there are aspects of the Lobbying Disclosure Act (Act), 65 Pa.C.S. §§ 1303–1311, which directly and unavoidably implicate the practice of law, and thereby conflict with this Court's exclusive constitutional power to regulate the legal profession. I certainly have no constitutional quarrel with the General Assembly's effort to regulate lobbyists. As Mr. Justice Saylor's opinion accurately points out, the wisdom and necessity of the General Assembly's effort at illumination through the disclosure requirements contained in the Act, at least as a general matter of policy, is undeniable and, more importantly, a matter for the Assembly itself to determine. Accordingly, I see no valid separation of powers concern arising from the fact that, under the Act, principals are required to file the designated reports and disclose the required lobbying information. In promoting their various causes, principals may hire whomever they please, including Pennsylvania attorneys, and they should be required to report the requested information relevant to their lobbying activity— including the subject matter of the lobbying, the amount of money involved, the names of State officials or employees contacted, and gifts or other items of value distributed by their efforts.

The difficulty, as I see it, arises when a person chosen by a principal to promote a cause is in a "regulated profession," specifically attorneys whose regulation is constitutionally delegated to the judicial branch. PA. CONST. art. V, § 10. Attorneys must abide by certain rules promulgated by this Court in the discharge of that constitutional power. Subject to our supervisory authority, this Court has adopted and has implemented the Pennsylvania Rules of Professional Conduct and the Pennsylvania Rules of Disciplinary Enforcement. Subject to certain exceptions not relevant to our inquiry today, one of the highest duties of an attorney is to maintain the confiden-

tiality of information that is disclosed in the context of the attorney/client relationship. *See* Pa.R.P.C. 1.6 ("A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . . ."). This rule of confidentiality is not limited to privileged information, but extends "to all information relating to the representation, whatever its source." *Id.* cmt. The Act, in its simplicity, attempts to respect this core duty—but unfortunately, by its very simplicity, I believe the Act necessarily encompasses a wide range of scenarios in lawyer-client interaction that will inevitably intrude upon the confidentiality Rule.

Especially egregious in this regard are sections 1305(b)(4), 1305(b)(6), and 1305(c) of the Act, which concern quarterly expense reports that must be filed with the State Ethics Commission. Section 1305(b)(4) requires a lobbyist "to sign the reports submitted by each principal represented to attest to the validity and accuracy to the best of the lobbyist's knowledge." Section 1305(b)(6) mandates that a lobbyist "submit a separate report if, during the reporting period, the lobbyist engaged in lobbying which was not contained in the reports filed by the principal or principals represented by the lobbyist." Section 1305(c) requires registrants to retain all documents necessary to substantiate the expense reports for a period of four years, and to allow inspection of the documents upon request by the Attorney General or the Commission.

When the lobbyist is an attorney who maintains an attorney/client relationship with his principal, these reporting provisions create the very real specter of an attorney being required to inform against his client, and in a fashion that may even lead to criminal charges against the client since such charges are included in the Act as sanctions. In that respect, the Act inevitably and directly intrudes upon the attorney/client relationship, including the lawyer's duty to maintain confidentiality. It requires an attorney lobbyist to choose between his duty to his client, duly imposed, recognized and enforced by this Court, and his duty under the Act, including a remarkable requirement that, upon a mere "request," the attorney turn over what would probably include confidential

information gleaned from a client. Indeed, the Act would *require* an attorney to do this in the situation where the principal deigns to withhold the subject information. The principal may then be subject to criminal sanctions arising solely through information disclosed by his attorney, and obtained in the course of the attorney/client relationship. *See* 65 Pa.C.S. § 1309(e) (individual who intentionally fails to register or file report commits misdemeanor of second degree; registrant who files report with knowledge that it contains false statement commits misdemeanor of second degree; other violations of Act amount to misdemeanors of third degree).[1] This legislation creates the very real prospect of forcing an attorney to disclose information that may implicate his client in a lobbying Act violation that may result in conviction and criminal sanction.

Mr. Justice Saylor's opinion well illustrates the salutary effect of a legislative scheme that would ensure that lobbying be "open." Making the principals do so and making the targets of lobbying activity also be "open" in reporting efforts to influence them would ensure just such an open system. But the Act goes much farther in that, at least when applied to lobbyists who are attorneys, it would require an attorney lobbyist to become an enforcer, or a source of information, against his client. And so, I would affirm the decision below because of the necessary implications arising from our constitutional duty to supervise the legal profession. Although the Act is well-intended and is a vehicle for good government, it intrudes on core aspects of lawyer/client relationships and, in

---

1. In his Opinion in Support of Reversal, Mr. Justice Saylor accurately notes that the Commission has promulgated regulations which purport to narrow the reach of the Act by exempting from the reporting requirement "[t]he contents of privileged communications, such as those between attorney and client...." Even assuming that the administrative regulation could be held up to shield certain prosecutions that the Attorney General could technically pursue under the statute as written, the point remains, as noted in the text, that a lawyer's duty of confidentiality extends well beyond mere privileged communications to encompass all information concerning the representation. The regulation, thus, does not dovetail with the duty an attorney owes to his client under our Rules governing the practice of law.

its present form, cannot stand.[2]

Justice SAYLOR.

## OPINION IN SUPPORT OF REVERSAL

In this case, the Commonwealth Court invalidated lobbying reform legislation that was duly enacted by the Pennsylvania General Assembly based upon its determination that the statutory scheme impermissibly encroaches upon this Court's exclusive jurisdiction to govern legal practice. Because I disagree with that conclusion and, moreover, regard the disposition as an infringement upon the Legislature's equally essential ability to regulate its own processes and procedures, I would reverse.

Although my own ultimate conclusion is opposite that which prevails here, I share core values that underlie the opinions in support of affirmance. Certainly, this Court's responsibility and authority with regard to regulation of the general practice of law are: firmly grounded in the Constitution, see PA. CONST. art. V, § 10; supported by the concept of inherent powers, see Pa.R.D.E. 103; and, as a function of the doctrine of separation of powers, guarded by the assertion of exclusivity. See id. As a threshold matter, therefore, the Justices favoring affirmance here and the Commonwealth Court rightly have evaluated the degree to which the Lobbying Disclosure Act constitutes an effort by the Legislature to regulate the practice of law.

In this regard, however, I would begin with a fuller assessment of the character and operation of the Act. As a foundational matter, the Act is grounded in public purposes that are focused squarely upon the representative (as opposed to the judicial) branch of government and widely recognized as compelling.[1] Long ago, the United States Supreme Court set

---

**2.** I should note that I also have serious reservations about the provisions in the Act prohibiting lobbyists from serving on a candidate's political committee or political action committee, 65 Pa.C.S. § 1307(B), since such a restriction implicates an individual's right of association. PA. CONST, art. I, § 20. However, no challenge to that provision is forwarded in this case.

**1.** See, e.g., Kimbell v. Hooper, 164 Vt. 80, 85, 665 A.2d 44 (1995) (observing that "lobbying disclosure laws are supported by several

forth the case for regulation of lobbyists as follows:

Present-day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise, the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal. This is the evil which the Lobbying Act was designed to help prevent.

Toward that end, Congress has not sought to prohibit these pressures. It has merely provided for a modicum of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose. It wants only to know who is being hired, who is putting up the money, and how much.

*United States v. Harriss*, 347 U.S. 612, 625, 74 S.Ct. 808, 816, 98 L.Ed. 989 (1954).[2] Likewise, the Pennsylvania General

compelling interests," including "protecting the integrity of the governmental process"); *Associated Indus. of Ky. v. Commonwealth*, 912 S.W.2d 947, 953 (Ky.1995) (stating, in the context of lobbying regulation, that the state "has a compelling interest in insuring the proper operation of a democratic government and deterring corruption, as well as the appearance of corruption[;][t]his, we hold, is demonstrative of the most important of interests[.]"); *Pletz v. Austin*, 125 Mich.App. 335, 336 N.W.2d 789, 800 (1983) ("a state has a compelling interest in the registration, regulation, and accountability of lobbyists"); *State Bar of Mont. v. Krivec*, 193 Mont. 477, 632 P.2d 707, 712 (1981) ("No reason appears why attorneys should enjoy especial dispensation from application of [a lobbying regulation] [i]nitiative when they are acting in that field[;][t]here is an obvious public interest in the regulation and disclosure of lobbying activities."); *Fritz v. Gorton*, 83 Wash.2d 275, 517 P.2d 911, 925 (1974) (commenting upon the importance of the electorate being apprised of the sources and extent of financial influences upon governmental officials). *See generally Montana Automobile Ass'n v. Greely*, 193 Mont. 378, 632 P.2d 300, 303 (1981) (collecting cases in which important state interests were found to support disclosure requirements).

**2.** Such reasoning was amplified by one court as follows:

First, disclosure ... permits legislators to evaluate whether the interest of a particular constituency is consistent with the interests of

Assembly has now determined that there is a need to identify and regulate compensated lobbyists and their principals in order to maintain the integrity of its own coordinate branch of government. *See* 65 Pa.C.S. § 1302 ("The ability of the people to exercise their fundamental authority and to have confidence in the integrity of the process by which laws are made and enforced in this Commonwealth demands that the identity and the scope of activity of those employed to influence the actions of the General Assembly and the Executive Department be publicly and regularly disclosed.").

That the General Assembly, as a coequal branch, has the power and prerogative to govern practices and proceedings before it should no more be subject to doubt than this Court's own regulatory authority in relation to legal proceedings. Like the Court's authority, the Legislature's is firmly predicated upon express constitutional provisions. *See* PA. CONST. art. II, § 11 ("Each house shall have the power . . . to enforce obedience to its process . . . and shall have all other powers necessary for the Legislature of a free state."). Moreover, the concept of inherent powers is not unique to the judicial branch, nor is the entitlement to assert a degree of regulatory exclusivity concerning matters within a branch's particular province.[3]

> other constituencies. Second, regulation of lobbying serves the needs of the electorate. "The voting public should be able to evaluate the performance of their elected officials in terms of representation of the electors' interest in contradistinction to those interests represented by lobbyists."
> Third, the state has a strong interest in promoting openness in the system by which its laws are created.
> *ACLU of N.J. v. New Jersey Election Law Enforcement Comm'n,* 509 F.Supp. 1123, 1129 (D.N.J.1981) (citations omitted).

**3.** *Accord Common Cause, Inc. v. State,* 691 N.E.2d 1358, 1361 (Ind.Ct. App.1998) (observing that, "[i]n essence, the ability of the legislature to regulate lobbyists is analogous to the authority the Supreme Court exercises over the conduct of lawyers . . . [;][j]ust as the courts must have the ability to regulate those who practice in front of them, so too must the General Assembly have the authority to regulate the activities of those seeking legislative redress"); *id.* at 1362 ("just as '[i]t is the exclusive province of [the Supreme] Court to regulate legal activity,' it is the exclusive province of the legislature to regulate the activity of lobbyists" (citation omitted)).

In seeking to vindicate these purposes via the Act, the Legislature expressly indicated that it is not its intent "to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch of government or by any government agency." 65 Pa.C.S. § 1302(b). From the substantive provisions of the Act, it is apparent that this expression is not a hollow one, as the statutory scheme reflects directed efforts on the part of the General Assembly to closely tailor the regulatory impact of the legislation and, correspondingly, to avoid governance of the practice of law as such. For example, key definitions within the Act limit its reach to communications with a state official or employee in an effort to influence legislative or administrative action (in addition to the provision to the same of gifts, entertainment, meals, transportation, or lodging). *See* 65 Pa.C.S. § 1303. Thus, as emphasized by Judge Flaherty in his dissenting opinion in the Commonwealth Court, by definition the category of regulated activities excludes core attorney functions such as the provision of legal opinions and advice to clients. *See Gmerek v. State Ethics Comm'n,* 751 A.2d 1241, 1268 (Pa.Cmwlth.2000) (Flaherty, J., dissenting).[4]

4. Writing against the Commonwealth Court majority's conclusion that lobbying activity performed by an attorney constitutes legal practice on the ground that the attorney provides opinions and advice to the client/principal, Judge Flaherty posited:

The [m]ajority fails to demonstrate how a lawyer's providing a legal opinion to a client as to the legality of proposed regulations or the meaning of a law or a proposed law and the lawyer's advice to the client as to the client's right to petition the government is a "direct communication" to a state employee or official or is an "indirect communication[,]" i.e., an effort to encourage the client to take action, the purpose or foreseeable effect of which is to directly influence legislative action or administrative action. See Section 1303 of the Act defining lobbying and direct communication and indirect communication. The [m]ajority seems to hold that a lawyer's mere providing of legal information or legal analysis is, as a matter of law, to be deemed to be an effort to encourage the client to take action and thus constitutes lobbying. In doing so, the [m]ajority fails to give sufficient weight to the fact that the Lobbying Act specifically provides that "[t]his chapter is not intended to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch of government...." Section 1302(b).

It is also of substantial significance that the Act is made applicable to attorneys and lay lobbyists equally. *See* 65 Pa.C.S. § 1302(b) (prescribing that "lobbyists and the practice of lobbying shall be the subject of this chapter," and "[m]embership in a regulated profession shall not excuse a lobbyist from compliance with the provisions of this chapter"). This Court has employed strong language to highlight that the general applicability of regulation to particularized activities performed by lawyers and non-lawyers alike is at least a substantial factor militating in favor of the conclusion that such regulation does not intrude upon this Court's exclusive authority.[5] *See P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 723 A.2d 174, 178 (1999) ("To hold, as [the] appellant suggests, that the mere status of 'attorney' exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of 'attorney' is absurd."); *see also Maunus v. State Ethics Comm'n,* 518 Pa. 592, 544 A.2d 1324, 1326 (1988); *accord Gmerek,* 751 A.2d at 1268 (Flaherty, J., dissenting) ("Nothing could be clearer than that holding [of *P.J.S.*] and the fact that the Lobbying Act is a regulation aimed at conduct applied to all persons where some of those persons happen to be attor-

*Gmerek,* 751 A.2d at 1267–68 (Flaherty, J., dissenting). I find this assessment equally valid as read against the reasoning applied in the lead opinion supporting affirmance.

**5.** The General Assembly has regulated several professions in which both attorneys and non-attorneys engage. *See, e.g.,* 63 P.S. §§ 455.101–455.902 (relating to real estate brokers); 40 P.S. §§ 231–297.4 (relating to insurance agents and brokers); 63 P.S. §§ 9.1–9.16 (relating to public accountants); 63 P.S. §§ 1601–1608 (relating to public adjusters); 70 P.S. §§ 1–301–1–306 (relating to securities broker-dealers); 5 Pa.C.S. §§ 3101–3312 (relating to athletic agents). Similarly, through the Act in the present case, the General Assembly regulates the lobbying profession, an activity in which both attorneys and non-attorneys participate. *Accord Pletz,* 336 N.W.2d at 796 (stating that "we do not find that the Act attempts to regulate the practice of law[;][t]he Act treats attorneys who lobby in an identical manner as non-lawyers"). Invalidation of this Act paves the way for other attorneys to challenge their non-legal professional regulations as well. *See generally Gmerek,* 751 A.2d at 1266 (Flaherty, J., dissenting) (analogizing an attorney/lobbyist to an attorney/realtor in terms of appropriate exposure to professional regulation).

neys.").[6]

The Act is also noteworthy for the modesty of its impositions. No attempt is made to control appearances before judicial tribunals; further, regulated efforts to influence executive and administrative action are expressly confined to avoid regulation of conduct before officers and agencies sitting in a quasi-judicial capacity. *See* 65 Pa.C.S. § 1303 (defining "administrative action" generally in terms of rulemaking and

6. Mr. Chief Justice Zappala's opinion favoring affirmance would limit *P.J.S.*'s holding, according to the opinion's quotation of *Maunus*, to the proposition that "an employer [can] impose workplace regulations on an employee who happens to be an attorney without infringing on [this Court's] constitutional authority to regulate the practice of law so long as those regulations do not conflict with the authority of this Court." Opinion in Support of Affirmance, *op.* at 818 (Zappala, C.J.). The difficulties with this position are severalfold. Contrary to the above assertion, in *P.J.S.*, the employer did not endeavor to regulate an attorney's activities—in point of fact the employer condoned those activities. *See P.J.S.*, 723 A.2d at 175. The regulation was imposed not by the employer but by a state statute, namely, the Ethics Act, as implemented by the State Ethics Commission. *See id.* at 175 & n. 2. Thus, the reasoning applied in *P.J.S.* was not crafted to turn upon the identity or intent of the attorney's employer, but rather, on the character and scope of the professional regulation in question and the nature of the activities subject to it:

The exclusive jurisdiction of this [C]ourt is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.

\* \* \*

Clearly [the] appellant's status as an attorney does not bar the [State Ethics] Commission from investigating allegations that [the] appellant engaged in conduct proscribed by the Ethics Act. The investigation of [the] appellant does not infringe upon this [C]ourt's exclusive jurisdiction to regulate the ethical and professional conduct of attorneys admitted to the practice of law in this Commonwealth.

*P.J.S.*, 723 A.2d at 178; *accord Kavanagh v. County of Will*, 689 N.E.2d 299, 303 (Ill.Ct.App.1997). *See generally Gmerek*, 751 A.2d at 1265–66 (Flaherty, J., dissenting) (setting forth an accurate explanation of the *P.J.S.* decision and holding).

In my view, *P.J.S.* is only fairly distinguishable on the basis that, in that case, the Court upheld the application of the State Ethics Act to activities by an attorney that clearly constituted the practice of law, while the Act in the present case simply does not reach legal practice. This distinction, however, militates in favor of the Act's preservation, not its invalidation.

policymaking functions). Additionally, the primary requirements imposed upon lobbyists are couched in terms of reporting and disclosure and are themselves relatively confined in terms of the magnitude of disclosures required.[7]

Correspondingly, the entity charged with the implementation of regulations effectuating the provisions of the Act, *see* 65 Pa.C.S. § 1310(c), has, in fulfilling its responsibilities, employed similar restraint. In harmony with the Lobbying Disclosure Act, the regulations promulgated pursuant to the provisions of the Act center disclosure and reporting requirements upon lobbying and direct communication and expressly permit lobbyists to maintain their records of lobbying separate from records of their other professional activities. *See* 51 Pa.Code § 35.2(b). The regulations excuse lobbyists from maintaining records of the contents of communications related to lobbying, *see* 51 Pa.Code § 35.1(g)(3)(iii), and clearly exclude privileged communications from mandatory disclosure. *See* 51 Pa.Code § 35.1(g)(3)(iv).

It is therefore apparent that, in establishing a mechanism for monitoring and evaluating lobbyists' influence on the political process, the legislative and executive branches have exercised substantial comity and deference in favor of this Court and other bodies charged with regulatory responsibilities in relation to persons who are lobbyists as well as members of other regulated professions. These efforts have culminated in a regulatory scheme that readily can be deemed to pertain to lobbying activities as such and not to legal practice.

7. *Accord Associated Indus. of Ky. v. Commonwealth*, 912 S.W.2d 947, 955 (Ky.1995) (regarding registration, disclosure, and reporting provisions as "minimal in view of the scope of the governmental interest of curtailing lobbying abuse"); *id.* at 954 ("We succinctly hold that the legislature has ... provided modestly for a modicum of information from those who, for hire, attempt to influence legislation[,] or, who collect or spend funds for that purpose[;][f]or this [c]ourt to determine otherwise would be a denial, in large measure, to the legislature of the power of self-protection."); *cf. Buckley v. Valeo*, 424 U.S. 1, 68, 96 S.Ct. 612, 658, 46 L.Ed.2d 659 (1976) (observing that "disclosure requirements ... appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption").

The main opinion favoring affirmance posits that Appellees "provide legal analysis to their clients regarding proposed legislation that is either communicated to state officials by Appellees themselves or their clients" and that such activities "clearly constitute 'direct' and/or 'indirect communications' with state officials as those terms are defined in the Act." Opinion in Support of Affirmance, *op.* at 819 (Zappala, C.J.). In light of the above, however, I fail to see how providing legal advice to a client is covered by the Act, for such conduct is neither a "direct communication" with a state official nor an effort to encourage the client to take action. As for any "legal analysis" that Appellees communicate to state officials in an effort to influence legislative or administrative action, I simply do not view such conduct as the practice of law. In my view, the General Assembly is well within its jurisdiction to regulate such activity, and it would serve the Court well to exercise reciprocal comity and deference in favor of the Legislature in the interpretation of an enactment so integral to its own fundamental processes.

Moreover, to the extent that the Lobbying Disclosure Act might be viewed as entailing some degree of incidental regulation of legal practice, I find such effect tolerable and, indeed, consistent with an appropriate understanding of separation of powers principles. As Judge Flaherty explained in his dissent:

> even if the Lobbying Act did incidentally regulate the practice of law, it does not follow that such incidental regulation of the practice of law is unconstitutional. For "the doctrine of separation of powers does not contemplate total separation of the three branches of government, and some powers may overlap. The lines of division are often indeterminate and incapable of exact definition." Thus, even if the Lobbying Act incidentally regulates the conduct of an attorney in the practice of law, it does not necessarily follow that the Act is unconstitutional.

*Gmerek,* 751 A.2d at 1268 (Flaherty, J., dissenting) (citations

omitted).[8]   Further, as this Court explained in *P.J.S.*, it is clear that the framers of the Pennsylvania Constitution did not intend for this Court's authority to be interposed as a shield to evade valid regulation of non-adjudicative activities occurring within another sphere of government.   *See P.J.S.*, 723 A.2d at 178.

While *P.J.S.* may contain some degree of oversimplification,[9] fundamentally the decision was correct in its recognition that there are necessary limits to this Court's assertion of exclusivity in the regulation of the practice of law, particularly where this Court's authority overlaps with that of a coequal branch. The broad definition of the practice of law was not crafted in such a context, nor should it be invoked to deprive the General Assembly of the restrained means of self-protection that it has chosen in the form of the Lobbying Disclosure Act.[10,11]

**8.**   *Accord Barland v. Eau Claire County*, 216 Wis.2d 560, 575 N.W.2d 691, 696 (1998).   *See generally* Adrian Vermeule, *The Judicial Power in the State (and Federal) Courts*, 2000 Sup Ct. Rev. 357, 363 (U.Chi.2000) ("The separation of powers [doctrine] does not prohibit interaction of branches or the commingling of their functions[;] [i]t prohibits one branch from appropriating or intruding upon the 'core functions' or 'essential functions' of other branches").   It is significant, in my estimation, that the opinion supporting affirmance provides no explanation concerning how the Lobbying Disclosure Act interferes with essential judicial functions.

**9.**   There may be situations in which a professional regulation aimed at lawyers and lay persons alike, when applied to attorneys, would intrude on this Court's exclusive function.   Therefore, while I would consider the regulatory measure's general applicability as a substantial factor in the assessment, I believe that it is also necessary to examine the character and substance of the regulation.

**10.**   Some other jurisdictions treat the overlap paradigm as follows: "If a statute falls within the judiciary's core zone of exclusive authority, the court may abide by the statute if it furthers the administration of justice, 'as a matter of comity or courtesy rather than as an acknowledgment of power.'   Compliance, however, is at the discretion of the judiciary and cannot be mandated." *Joni B. v. State*, 202 Wis.2d 1, 549 N.W.2d 411, 414 n. 5 (1996) (citation omitted).

**11.**   I have attempted to frame the foregoing discussion primarily around the central reasoning of the main opinion favoring affirmance; however, I also note my substantial agreement with Judge Flaherty's sound treatment of the remainder of Appellees' arguments.   *See Gmerek*, 751 A.2d at 1265–71 (Flaherty, J., dissenting).

In summary, the Lobbying Disclosure Act is designed to enhance the ability of the people of the Commonwealth to exercise their authority over their government by ensuring that activities of those engaged to influence the General Assembly and executive branch are publicly disclosed. The Act is not specifically aimed at the activities of lawyer-lobbyists; rather, it seeks to further the public interest by regulating the activities of all lobbyists in Pennsylvania, lawyers and non-lawyers alike. In this effort, I discern no legislative incursion, invasion, or encroachment on any fundamental component of judicial power, authority, or function. Indeed, as a matter of comity and deference, to the extent that there is any potential disharmony with our existing rules, I would employ the Court's board and committee structure to evaluate amendments to the rules to ensure that they accommodate this legislation.

Justice NIGRO and Justice NEWMAN join in this opinion.