822 A.2d 684

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kelvin X. MORRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided May 1, 2003.

Stuart Brian Lev, Robert Brett Dunham, Philadelphia, for Kelvin X. Morris, Appellant.

Catherine Marshall, Amy Zapp, Philadelphia, for the Com. of PA, Appellee.

Before CAPPY, C.J., and ZAPPALA, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CHIEF JUSTICE CAPPY.

We granted a stay of execution in this case on June 21, 2001 in order to fully consider the appropriate parameters for granting or denying a stay of execution in a capital case in

which a second or subsequent collateral appeal is pending before this court. After reflection on this matter, we hold that a stay of execution arising at the collateral review stage should be considered according to the dictates of the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. § 9545(c), and therefore vacate our earlier order granting the stay of execution in this case. We also deny relief on Appellant's collateral review petition, which is pending before our court, at this time.

A brief recapitulation of the procedural history is warranted to understand how this case is before our court.[1]

On November 30, 1983 a jury convicted appellee, Kelvin X. Morris, of first-degree murder and robbery. Following a penalty phase hearing, the jury sentenced him to death. New counsel was appointed and on direct appeal, this court affirmed. *Commonwealth v. Morris*, 522 Pa. 533, 564 A.2d 1226 (1989). On April 2, 1990, appellee filed his first PCRA petition. New counsel was appointed and the PCRA court denied relief on January 18, 1995. On appeal, this court affirmed. *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037 (1996). On December 30, 1996, appellee filed a second PCRA petition. New counsel was appointed and filed an amended petition. While appellee's second petition was pending before the lower court, the Governor signed a death warrant scheduling appellee's execution for January 27, 2000. Appellee filed a Motion for a Stay of Execution with the PCRA court. On December 21, 1999, the PCRA court denied appellee's second PCRA petition on the basis that it was untimely. However, on that same date, the [PCRA] court granted appellee's motion for a stay of execution.

*Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 727–28 (2001) (hereinafter *"Morris I"*). The Commonwealth then filed an Emergency Petition to this court to review the trial court's stay order. Following oral argument, this court vacated the trial court's order staying the execution on the basis that the trial court failed to comply with the requirements of 42 Pa.C.S. § 9545(c). 771 A.2d at 742.

---

1. The factual history underlying this case can be found at *Commonwealth v. Morris*, 522 Pa. 533, 564 A.2d 1226 (1989).

Appellant's execution was then scheduled for June 28, 2001. Appellant filed an Emergency Petition for Stay of Execution requesting that this court stay his execution pending this court's resolution of his second petition for collateral review. We granted the stay of execution and ordered the parties to brief the following issues:

1) Whether a petitioner must satisfy the dictates of 42 Pa.C.S. § 9545(c) as interpreted by this court in *Commonwealth v. Morris*, [565 Pa. 1, 771 A.2d 721 (Pa.2001)] in order to obtain a stay of execution from the Supreme Court of Pennsylvania.

2) Whether this court has inherent powers to grant a stay to a petitioner who does not meet the dictates of § 9545(c).

Order of the Supreme Court of Pennsylvania, 6/21/2001. We also instructed the parties to be prepared to submit appellate briefs relating to the pending PCRA petition at that time. *Id.*

Turning first to the issues raised in the Emergency Petition, Appellant argues that we are not bound by the PCRA because this court always has the inherent power to grant a stay of execution. Similarly, this court always has inherent powers to "enforce fundamental truths that this Nation and this Commonwealth hold to be self-evident: that 'all men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty ... and pursuing their own happiness'." Petitioner's Brief Concerning this Court's Powers to Grant Stays of Execution at 7 (*citing* Pa. Const. Art. 1, § 1). Accordingly, a claimant may, but does not need to, satisfy the dictates of the PCRA as discussed in *Morris I,* in order to obtain a stay of execution from this court.

Appellant attempts to distinguish this court's opinion in *Morris I* by arguing that this court must issue a stay of execution in order to consider: whether the time requirements of the PCRA are met; any alternative bases for appellate jurisdiction outside the framework of the PCRA; or the merits of any substantive claim raised therein. Appellant asserts that a stay of execution is appropriate whenever an

applicant has presented a non-frivolous, prima facie assertion that his petition is timely. *Commonwealth v. Brady,* 510 Pa. 336, 508 A.2d 286 (1986)(setting a non-frivolous standard for pre-trial stay related to resolution of double jeopardy claim). In other words, this court should grant a stay anytime it is necessary to preserve the status quo.

The Commonwealth acknowledges that this court has an inherent power to grant stays of execution, but asserts that the pertinent question in this case is when that power may be used. According to the Commonwealth, section 9545(c) clearly indicates the legislature's intent to limit a court's authority to enter a stay of execution in capital cases and applies to all of the courts of this Commonwealth.

The Commonwealth next contends that Appellant's arguments have largely been settled by this court's opinion in *Morris I.* Moreover, a non-frivolous stay standard would allow a claimant to perpetually litigate his claims in state court, rather than ensuring some finality in the collateral review process.

The section of the PCRA at issue in this case provides:

(c) Stay of execution.—

(1) No court shall have the authority to issue a stay of execution in any case except as allowed under this subchapter.

(2) Except for first petitions filed under this subchapter by defendants whose sentences have been affirmed on direct appeal by the Supreme Court of Pennsylvania between January 1, 1994, and January 1, 1996, no stay may be issued unless a petition for postconviction relief which meets all the requirements of this subchapter has been filed and is pending and the petitioner makes a strong showing of likelihood of success on the merits.

(3) If a stay of execution is granted, all limitations periods set forth under sections 9574 (relating to answer to petition), 9575 (relating to disposition without evidentiary hear-

ing) and 9576 (relating to evidentiary hearing) shall apply to the litigation of the petition.

42 Pa.C.S. § 9545(c).

Before undertaking an analysis of the parties' various arguments in this case, a helpful starting point is to briefly review the opinion in *Morris I*. In *Morris I*, we entertained the question of the PCRA court's power to issue a stay of execution outside the framework of section 9545(c). In *Morris I*, the trial court denied Morris's PCRA petition on the basis that it was untimely, but then granted the stay of execution. We granted the Commonwealth's request to appeal in order to consider whether the PCRA court properly granted the stay of execution, which did not comply with the requirements of section 9545(c). This issue necessarily required this court to ascertain whether the PCRA court could issue a stay of execution outside the parameters of section 9545(c).

In concluding that the PCRA court was bound by the provisions of section 9545(c), we first examined Morris's argument that the section violated his constitutional right to appeal. We explained that the legislature might limit constitutional rights, so long as those limits are reasonable. 771 A.2d at 732. We emphasized that one of the goals of the PCRA was to balance the competing interests between a claimant's right to review and the state's interest in finality. *Id.* at 734. At the time of a second or subsequent petition, the state's interest in finality is more compelling. Additionally, "the potential that appellee is merely using the process to delay the execution of his sentence is greater." *Id.* With these considerations in mind, we then analyzed the specific requirements of section 9545(c), and concluded that the section placed reasonable limitations on a claimant's right to appeal a second or subsequent petition for collateral relief. *Id.* at 735–36.

We also entertained Morris's argument that the section violated the separation of powers doctrine. We indicated that the section was substantive in nature, rather than procedural, and thus, was a valid exercise of the legislature's authority. *Id.* at 737. Accordingly, we concluded that a PCRA court was

bound by the requirements of section 9545 and could only enter a stay when the court had reasonably concluded that those requirements were met. *Id.* at 739–40. Thus, we in essence held that the PCRA court could not grant a stay of execution outside the framework of the PCRA.

In order to give further guidance to the bench and bar, we then discussed the requirements that must be met before the PCRA court could enter a stay of execution pursuant to section 9545(c). First, we explained that a claimant must demonstrate that his or her underlying petition is timely or, when untimely, that it falls within one of the exceptions to the time requirement pursuant to 42 Pa.C.S. § 9545(b)(1) and that it was filed "within 60 days of the date the claim could have been presented," 42 Pa.C.S. § 9545(b)(2). 771 A.2d at 740. Next, a claimant must demonstrate that there is an action "pending" before the court. *Id.* at 741. Lastly, a claimant must demonstrate that he has "some likelihood of prevailing on the merits, since it is only where there is some likelihood of prevailing on the merits that a stay must be granted." *Id.*

Applying these requirements to Morris, we concluded that the PCRA court erroneously granted a stay of execution outside the framework of the PCRA. The PCRA court determined that the petition was untimely, and thus, we determined that it could not also grant the stay of execution, since section 9545 required, inter alia, that the petition be timely filed. Accordingly, the trial court's order staying the execution was vacated. *Id.* at 742.

We now turn to a review of the issues currently presented. We must first consider Appellant's argument that section 9545 cannot alter this court's inherent power to issue stays of execution. According to Appellant, this court can and should disregard section 9545 whenever it is necessary to preserve the status quo. The Commonwealth, while acknowledging that this court has the inherent power to issue a stay of execution, replies that this court should follow the requirements of section 9545 in deciding whether to grant or deny a stay of execution in collateral capital matters.

Appellant is essentially requesting that we announce in this case that we have a general inherent power to issue stays of executions in all capital cases in order to preserve the status quo. We recognize that circumstances may arise where this court will need to analyze its inherent powers to issue a stay of execution in a collateral case. For example, as we alluded to in *Morris I*, under certain circumstances application of section 9545 may not be constitutional as applied to the parties before the court. *See, e.g., Morris I*, 771 A.2d at 734 n. 14, 735 n. 16 (discussing that circumstances, such as failing to have adequate time to review the petition or failure to have a petition "pending" before our court, may arise where the application of section 9545(c) to a particular claimant may render that section unconstitutional as applied in those circumstances). Additionally, as discussed infra, some claims may not fall within the parameters of the PCRA, such as a claim of habeas corpus or coram nobis. However, Appellant does not challenge the constitutionality of the PCRA as applied in his particular case nor does he raise a claim that is outside the parameters of the PCRA. Thus, all of the issues in this case are within the rubric of the PCRA and we will limit our consideration to whether this court **should** grant a stay of execution outside the framework of section 9545(c) where a second or subsequent petition for post-conviction relief is filed pursuant to the PCRA and an appeal on that petition is pending before this court.

■ To facilitate an assessment of the parties' arguments in this matter, we will revisit the language of the stay provision at issue. Subsection 9545(c)(1) provides that "[n]o court shall have the authority to issue a stay of execution in any case except as allowed under this subchapter." The introduction of this subsection with "[n]o court" makes clear that this provision is intended to apply to all courts of this Commonwealth.

Subsection 9545(c)(2) sets forth the requirements that must be met before a court of this Commonwealth can properly enter a stay of execution in a second or subsequent collateral matter. *See* 42 Pa.C.S. § 9545(c)(2). We have already concluded that the PCRA court is bound by the requirements of

this subsection and can only enter a stay when such requirements are met. *See Morris I*, 771 A.2d at 739–40. We see no reason to depart from this conclusion merely because the application for the stay of execution is in front of this court. Section 9545(c) conditions the exercise of the power to stay an execution on a showing that "a petition for postconviction relief which meets all the requirements of this subchapter has been filed and is pending and the petitioner makes a strong showing of likelihood of success on the merits." As discussed previously, the legislature crafted the PCRA, including this provision, in order to accord criminal matters finality. *Id.* The interest in finality is not altered simply because the petition is pending before this court rather than the court below. Indeed, this court has repeatedly cautioned against encouraging further delays in capital matters by allowing claimants to file serial collateral petitions. *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998). Accordingly, we will respect the parameters that the legislature has constructed when exercising our power to grant a stay of execution involving a second or subsequent collateral petition.

Appellant also presents a general challenge to the constitutionality of section 9545 by arguing that application of this section to his case would result in the violation of "fundamental truths" as guaranteed by the Pennsylvania Constitution. We have already concluded that section 9545(c) is constitutional as applied to the PCRA court in *Morris I* and we see no reason to revisit the same analysis in the instant opinion. Appellant fails to develop his argument in any meaningful fashion. Suffice it to say that Appellant has offered nothing in his argument to this court that would alter our prior analysis or would make the provision of section 9545(c) unconstitutional as applied to this court, but constitutional as applied to the courts below.

■ We next turn to Appellant's arguments which invite this court to declare that it will grant stays of execution even when the petition does not comply with the PCRA's jurisdictional or other substantive requirements. For example, Appellant urges this court to state that it can issue a stay of

execution to review the threshold jurisdictional timeliness question regardless of whether the claimant has complied with the requirements of section 9545(c). According to Appellant, issues of timeliness are too complex to resolve in a limited period of time and as such, this court must be able to issue a stay of execution to entertain these issues. *Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001).

In *Tyler,* the Court suggested that questions involving the retroactivity of a new constitutional rule were too complex to be decided within the thirty-day appeal period. *Id.* at 2483. Appellant's reliance on *Tyler* implies that questions of timeliness are similar to issues of retroactivity. We disagree. Unlike questions of retroactivity, questions of timeliness are jurisdictional threshold questions that are clearly delineated by the terms of the PCRA—the PCRA defines what constitutes a timely-filed petition. It is the claimant's burden to establish that a court has jurisdiction over the claims raised in the petition. Thus, any jurisdictional questions should be well fleshed out in advance and we believe that issues related to timeliness should be relatively easy to dispose of by the time they reach this court. In the event that this court is confronted with a complex question as to the timeliness of a PCRA petition, we can analyze the stay provision in context at that time.

Similarly, Appellant points out that not all claims will necessarily fall within the rubric of the PCRA. Rather, Appellant contends that some claims may be more properly addressed under habeas corpus or coram nobis and this court may need to grant a stay of execution outside the framework of the PCRA in order to address such claims. We have previously made clear that the PCRA subsumes the writ of habeas corpus and that habeas corpus provides an independent basis for relief only in those cases when there is no remedy under the PCRA.[2] *Commonwealth v. Fahy,* 558 Pa.

---

**2.** We have not had the opportunity to declare that coram nobis is subsumed within the context of the PCRA, however, the plain language of the PCRA applies to both habeas corpus and coram nobis. *See* 42 Pa.C.S. § 9542 (the PCRA provides "the sole means of obtaining

313, 737 A.2d 214, 223–24 (1999); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999). In that rare instance in which a claim is not subsumed within the context of the PCRA, we will need to consider the applicability of section 9545(c) at that time.

■ Lastly, Appellant urges us to adopt a standard that would allow this court to grant a stay of execution to review any non-frivolous claims raised in a PCRA petition. *Commonwealth v. Brady,* 510 Pa. 336, 508 A.2d 286 (1986). In *Brady,* this court discussed the standard for staying criminal matters to appeal a double jeopardy claim. Ultimately, we concluded that "an appeal from the denial of a motion on double jeopardy grounds should not be permitted where the hearing court has considered the motion and made written findings that the motion is frivolous. Absent such a finding, an appeal may be taken from the denial of the motion." 508 A.2d at 291. Appellant suggests that we adopt a similar "non-frivolous" standard in the context of collateral petitions in order to ensure that a claimant is not executed without receiving review of his claims of error. In other words, in Appellant's view, this court should grant a stay of execution whenever a claimant raises a non-frivolous issue for review. This standard is much more lenient than that suggested by the plain language of section 9545(c).

■ Appellant's argument overlooks that, as we held in *Morris I,* and as explained more fully in the concurring statement authored by Mr. Justice Castille in that same case, the standard for issuing a stay of execution enumerated in section 9545(c) applies to second or subsequent collateral proceedings. *Id.* at 734–35, 564 A.2d 1226; *see id.* at 745, 564 A.2d 1226 (Castille, J. concurring). In other words, a claimant has already had review of his substantive claims in a direct appeal and a first collateral appeal. Thus, at this stage in the proceedings, the claimant's interest in further review of his claims is less and it is the state's interest in finality of the

collateral relief and encompasses all other common law and statutory remedies for the same purpose …, including habeas corpus and coram nobis.")

proceedings that becomes more pressing. The requirements enumerated in the stay provision reflect these concerns and provide a heightened standard for review, since "the potential that appellee is merely using the process to delay the execution of his sentence is greater." *Morris I.*

In *Fahy,* this court entertained a similar issue. Appellant therein requested that this court consider the merits of the claim whenever the claimant made a prima facie showing of a miscarriage of justice. *Fahy,* 737 A.2d at 223. In rejecting the claimant's contention, we explained that this court has no jurisdiction, regardless of the merits of the petition, to entertain an untimely petition. *Id.* Thus, *Fahy* similarly suggests that this court cannot ignore the jurisdictional time requirements of the PCRA regardless of the merits of the underlying petition. As *Fahy* rejected a "miscarriage of justice" standard exception to the time requirements of the PCRA, we are rejecting a "non-frivolous" standard for the issuing of a stay of execution.

Our conclusion today is not that all claimants are barred from raising any further claims at this stage in the proceedings, but rather, we conclude that in light of the competing interests of the parties at this stage in the proceedings, the additional restrictions that the legislature has placed on further review of a claimant's case are reasonable. We also express no view on whether section 9545(c) infringes on our inherent power to issue a stay of execution in those instances when a claim is not subsumed within the framework of the PCRA or when the PCRA is unconstitutional as applied to a particular claimant. Rather, pursuant to our holding today, we view section 9545(c) as a constitutional legislative attempt to balance the competing interests of the parties involved in a second or subsequent collateral matter. Accordingly, we accept the requirements of the stay provision set forth in section 9545(c) and will adhere to those requirements when considering a stay of execution related to a second or subsequent collateral petition pending before this court.

 Applying these standards to the case herein, we must now consider whether the stay of execution was warranted in light of the claims raised in Appellant's PCRA petition. In order for this court to continue the stay of execution in this case so that the claims can be reviewed and relief granted, Appellant must meet the requirements of section 9545(c). Thus, this court can only continue the stay of execution if Appellant demonstrates that his petition is timely filed, since the petition must meet "all the requirements of this subchapter," which necessarily includes the time requirements. *See* 42 Pa.C.S. § 9545(c); *Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497, 500 (2002); *Morris I,* 771 A.2d at 740. This time requirement is jurisdictional; when the petition is untimely, a court cannot reach the substantive issues presented in the petition. *See Morris I,* 771 A.2d at 735; *Fahy,* 737 A.2d at 223. Further, Appellant must demonstrate that he has made a strong showing of likelihood of success on the merits. 42 Pa.C.S. § 9545(c); *Morris I.* It is only where these requirements are met that a court can enter a stay of execution where a second or subsequent petition is before the court.

 In order to properly review Appellant's claims, we must first determine whether this court has jurisdiction over the instant petition. There is no question that Appellant filed this petition outside the time requirements of the PCRA. However, Appellant asserts a general claim that his entire petition meets the exception to the time requirement expressed in section 9545(b)(1)(ii), which provides that:

the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.

42 Pa.C.S. § 9545(b)(1)(ii). According to Appellant, this exception applies to his petition due to the ineffectiveness of PCRA counsel. Appellant points out that we have held that the Rules of Criminal Procedure "require[s] an enforceable right to effective post-conviction counsel." *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). The only way to effectuate this right to counsel is to give a claimant the opportunity to raise the ineffectiveness in a second or subse-

quent petition. Appellant posits that PCRA counsel's ineffectiveness could not have been discovered or raised prior to this court's affirmance of the denial of PCRA relief. Thus, this court's denial of PCRA relief was a new fact that established the factual predicate necessary to raise the claim of PCRA counsel's ineffectiveness.

■ As we have previously and repeatedly explained, a claim of ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits. *Fahy*, 737 A.2d at 223; *see also Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780 (2000); *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 643 n. 5 (1998). For example, in *Gamboa–Taylor*, the appellant attempted a similar end-run around the time requirements of the PCRA by alleging that PCRA counsel's ineffectiveness was within the after-discovered evidence exception to the time requirements. In rejecting the appellant's argument, we explained "subsequent counsel's review of previous counsel's representation is not a newly discovered 'fact' entitling Appellant to the benefit of the exception for after-discovered evidence. In sum, a conclusion that previous counsel was ineffective is not the type of after-discovered evidence encompassed by the exception." 753 A.2d at 785.

■ Appellant raises a similar claim in this case, but injects our holding in *Albrecht* into the argument. However, our holding in *Albrecht* does not alter the fundamental tenet that claims of ineffectiveness will not save an otherwise untimely petition.[3] *Peterkin*, 722 A.2d at 643 n. 5. As we

**3.** Effective assistance of trial and direct appeal counsel is guaranteed by the United States and Pennsylvania Constitutions and yet, we have similarly concluded that a claimant cannot circumvent the time requirements of the PCRA merely by alleging counsel ineffectiveness. *Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232, 1236–37 (2001)(alleging trial counsel's ineffectiveness as basis for reinstatement of appeal rights nunc pro tunc would not provide basis for relief outside framework of the PCRA); *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201 (2000) (same); *but see Commonwealth v. Saranchak*, 570 Pa. 521, 810 A.2d 1197 (2002) (allowing claimant to reinstate first PCRA petition outside the time requirements of the PCRA in unique context of capital

explained in *Peterkin* and reiterated herein, one of the main purposes of the PCRA was to provide finality in criminal matters and the PCRA accomplished this by striking a reasonable balance between the need for finality and "the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his conviction." *Id.* at 642–43. Allowing a claimant to circumvent the time requirements of the PCRA by couching his claims in terms of ineffectiveness would clearly thwart this purpose. Thus, based upon the above, we conclude that, to the extent that Appellant attempts to raise the claims in his petition by alleging PCRA counsel's ineffectiveness, we do not have jurisdiction to review such claims.[4]

■■■ In addition to formulating his claims in terms of PCRA counsel's ineffectiveness, Appellant raises eleven claims separately under the after discovered evidence and governmental interference exceptions to the time requirements.[5] First, Appellant asserts that the Commonwealth withheld exculpatory evidence regarding the juvenile record of Ronald Johnson, one of the Commonwealth's main witnesses. According to Appellant, due to the Commonwealth's failure to disclose this exculpatory material, this claim could not be raised in prior litigation. Further, this claim is timely because "the

case). It would be anomalous to reach a different result due to the alleged ineffectiveness of PCRA counsel, especially since we have yet to declare that a claimant has a constitutional right to collateral counsel. Rather, at this time, the right to effective assistance of collateral counsel is derived from the Rules of Criminal Procedure. *See Albrecht supra.*

4. The Commonwealth also alleges that this court should not review Appellant's claims since he did not allege any of the time exceptions to the PCRA in his original PCRA petition. We agree with the Commonwealth that the plain language of the PCRA requires a claimant to "allege" and "prove" that his petition meets the jurisdictional time requirements. 42 Pa.C.S. § 9545(b)(1). However, we will not hold this failure fatal to further review of Appellant's claims, since he attempted to comply with this requirement following our decision in *Peterkin* and we are able to dispose of Appellant's claims on the basis that they are untimely.

5. 42 Pa.C.S. § 9545(b)(1)(i) provides that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or laws of the United States."

failure to raise the claim previously was the result of interference of government officials," since the Commonwealth violated its ongoing obligation to disclose exculpatory materials pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See* 42 Pa.C.S. § 9545(b)(1)(i).

Appellant fails to make clear that trial counsel did not have access to this information at the time of trial. In fact, his allegations appear to contradict the jurisdictional argument he makes above, since he asserts that the trial court precluded defense counsel from demonstrating Johnson's bias and motive to the jury. Indeed, as the Commonwealth notes in the "Amended Petition," Appellant appears to acknowledge that defense counsel began to cross-examine Johnson about his juvenile record, but the trial court did not allow such cross-examination. *See* Amended Petition for Habeas Corpus Relief at 53, ¶ 124; N.T. 11/21/1983, pp. 30–31. Accordingly, Appellant cannot establish that this claim was presented within 60 days of the date the claim could have been presented as required by section 9545(b)(2) since this evidence was available at the time of trial. Thus, this court does not have jurisdiction to review this claim.

Next, Appellant alleges that the Commonwealth withheld various other exculpatory evidence including other evidence related to Johnson; exculpatory information from Anthony Stokes; polygraph evidence that undermined Artie Morris's alibi testimony [6]; and test results related to physical evidence that was allegedly discarded by the perpetrator of the offense.

Appellant first argues that the Commonwealth withheld various other exculpatory evidence related to Johnson's testimony in violation of *Brady.* In order for a defendant to establish the existence of a *Brady* violation, he must establish that there has been a suppression by the prosecution of either exculpatory or impeachment evidence that was favorable to the accused, and that the omission of such evidence prejudiced the defendant. *See Commonwealth v. Paddy,* 569

6. Artie Morris is Appellant's brother.

Pa. 47, 800 A.2d 294, 305 (2002). Further, no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence. *Id.*

Appellant simply fails to establish that the Commonwealth suppressed this evidence in violation of *Brady.* Appellant raises a myriad of claims related to Johnson's testimony. For example, Appellant asserts that the police threatened Johnson with prosecution and promised him leniency in exchange for his testimony. However, Appellant does not make clear that this information was not available at trial or that defense counsel could not have uncovered this evidence with reasonable diligence. Thus, Appellant has failed to establish whether this claim was raised within sixty days of the time it could have been presented. Additionally, Appellant fails to explain how the omission of such evidence prejudiced him. Accordingly, we are without jurisdiction to review Appellant's claim.

Second, Appellant argues that the police threatened Commonwealth witness, Anthony Stokes, and pressured him into identifying Appellant as the shooter. Again, there is no indication that this information was not available at the time of trial. Moreover, by Appellant's own admission, Stokes did not identify Appellant as the shooter at trial. *See* Amended Petition for Habeas Corpus Relief at 63, ¶ 146. Indeed, a review of the record indicates that Stokes did not testify at trial nor was his statement admitted at trial. Thus, Appellant cannot establish that he was prejudiced by any omission.

Third, Appellant asserts that the Commonwealth committed a *Brady* violation when it failed to reveal information that Regina Handy, who was Artie Morris's alibi witness, had failed a polygraph examination regarding the fact that she was with Artie Morris at the time of the shooting. Handy did not testify at trial. According to Appellant, the Commonwealth should have revealed this information to the defense so that he could have put Handy on the stand to testify that she was not with Artie Morris at the time of the shooting. However, as Appellant admits, Handy was told she had failed the

polygraph examination at the time of the test. Thus, she knew prior to trial that she had flunked the polygraph examination and defense counsel could have uncovered this information from her with reasonable investigation. Appellant simply has not established that he is presenting this claim within sixty days of the time it could have been presented and this court is without jurisdiction to review Appellant's claim. 42 Pa.C.S. § 9545(b)(2).

■ Fourth, Appellant asserts that the Commonwealth has suppressed the results of testing of a yellow bag that was seized at the scene of the crime. Appellant raised a similar claim in his first PCRA alleging that trial counsel was ineffective for failing to "attempt to discover whether the police recovered a yellow plastic bag that eyewitnesses described him as carrying and, if so, whether it bears detectable fingerprints." *Morris,* 684 A.2d at 1045. We dismissed this claim since it was entirely speculative, as Appellant did not show that the yellow bag even existed. Appellant now attempts to relitigate this claim by alleging that the Commonwealth has never revealed the results of any tests performed on the bag. Again, however, Appellant has failed to establish that the yellow bag even existed. More importantly, this claim of error has been previously litigated and Appellant cannot establish that he is entitled to relief on a previously litigated claim. *See* 42 Pa.C.S. § 9543(a)(3).

■ Appellant next raises two arguments based upon racial discrimination. First, Appellant asserts that recent revelations, i.e., the "McMahon tape" [7], regarding the Philadelphia District Attorney's Office revealed a policy of racial discrimination in jury selection by members of that office. Second, Appellant argues that a recent study by Professors David Baldus and George Woodworth (hereafter "Baldus/Woodworth study") establishes that the overall odds that an African–American defendant will be sentenced to death in

7. The McMahon tape refers to a 1987 videotape in which a Philadelphia assistant district attorney, Jack McMahon, described his views on jury selection. *Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978 (2002).

■■■■■■■■

Philadelphia are four times greater than for non-African-American defendants.

Appellant's first argument has been repeatedly rejected by this court on the basis that the mere existence of the tape does not demonstrate that there was prejudice in a particular case. *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 443 n. 10 (1999); *see also Commonwealth v. Marshall,* 570 Pa. 545, 810 A.2d 1211, 1228 (2002); *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 588–89 (2000). Other than bald assertions, Appellant fails to provide any argument as to how this policy affected the jury selection in his case. Similarly, this court has repeatedly rejected speculative arguments based on the Baldus/Woodworth study. *See, e.g., Marshall; Lark.* Again, Appellant does not provide a link between the study and the facts and circumstances of his particular case.

■■■ Appellant also asserts that he is entitled to relief because the penalty phase jury instructions and the verdict sheet unconstitutionally indicated that the jury had to unanimously find mitigating circumstances in violation of *Mills v. Maryland,* 486 U.S. 367, 374–75, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). According to Appellant, this court should review his claim because we reviewed a similar untimely claim in *Commonwealth v. Cross,* 555 Pa. 603, 726 A.2d 333 (1999). Appellant overlooks that in *Cross,* this court specifically gave the parties time to file a supplemental brief on this matter in order to consider the effect of a new decision by the Third Circuit, *Frey v. Fulcomer,* 132 F.3d 916 (3d Cir.1997). 726 A.2d at 337. Ultimately, we disagreed with the conclusion of the Third Circuit and held that *Frey* had no effect on the instruction in *Cross.* Although we reviewed the merits of the appellant's claim in *Cross,* we did so only to review the effect of the decision in *Frey.* Following *Cross,* there is no longer a reason to review claims of error pursuant to the decision in *Frey,* since we rejected the argument that we must follow the decision in *Frey* and instead reiterated that the proper standard was that stated in *Mills. Id.; see also Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 450 n. 15 (1999). Accordingly, Appellant cannot establish that this claim was raised

within sixty days of the date it could have been presented as *Mills* was decided before his direct appeal was final and before his first PCRA and this court is without jurisdiction to review this claim. 42 Pa.C.S. § 9545(b)(2).

Next, Appellant argues that counsel was ineffective for failing to properly investigate and present evidence related to one of the Commonwealth's key witnesses, James Willie. According to Appellant, counsel was unprepared to rebut the Commonwealth's evidence that suggested that forgery charges were falsely brought in order to influence Willie's trial testimony and such failure was compounded as a result of governmental interference as the Commonwealth had a duty to correct erroneous testimony and not argue false inferences to the jury. However, what is clear from Appellant's argument is that this claim is based upon counsel's failure to investigate rather than the Commonwealth's interference. Indeed, Appellant alleges that had counsel properly investigated he could have learned of the alleged forgeries prior to trial. Thus, this information was clearly available to Appellant at the time of trial and Appellant's attempt to cloak this claim as one of "governmental interference" misses its mark.

Appellant next asserts that he is entitled to discovery and an evidentiary hearing regarding witness participation in the Philadelphia District Attorney's Office Witness Security Program, which allegedly entitled witnesses to economic benefits in exchange for their testimony. Appellant argues that the failure to previously raise this claim was the result of interference by government officials. Again, similar to the racial discrimination claims raised herein, this court has rejected these speculative claims in the absence of any allegations tying the witnesses in a particular case to the District Attorney's policy of paying for their services. *Lark*, 746 A.2d at 590–91.

Lastly, Appellant asserts that "upon information and belief" the assistant district attorney who prosecuted Appellant was a relative of the owners of the Pep Boys store where this crime occurred and that such a relationship constitutes a

conflict of interest requiring that his conviction be reversed. Appellant also argues that the failure to raise this claim was the result of interference by government officials. Appellant has again failed to establish when he became aware of this information. More importantly, Appellant has offered nothing other than his bald statement in support of his allegations. Accordingly, this allegation warrants no further attention by this court.

For the reasons stated herein, we conclude that we are without jurisdiction to review the instant petition. Accordingly, we cannot continue the stay in this matter, as there is no "petition for postconviction relief which meets all the requirements of this subchapter" currently pending before us. The stay of execution is hereby vacated. Furthermore, we affirm the order of the PCRA court denying Appellant's second Petition for Post Conviction Relief at this time.

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

JUSTICE CASTILLE CONCURRING.

I join in the Majority Opinion, with the exception of certain minor points of disagreement addressed below. I also write to address further: (1) this Court's inherent power to issue a stay of execution; (2) the validity of this Court's prior stay order; and (3) the reasons why I believe 42 Pa.C.S. § 9545(c) properly controls the stay issue.

From the moment this Court issued the stay of execution in this case on June 21, 2001, over my dissent, the question of our "inherent power" to do so became moot at best. Since the Majority does not suggest that our stay order was authorized under Section 9545(c)—*i.e.*, appellant did not "make a strong showing of likelihood of success on the merits" of his appeal

from the dismissal of his time-barred, second petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*—it can only have resulted from our "inherent powers." Thus, the Commonwealth correctly notes: "It would be an appeal to fantasy to suggest that this Court did not have the power to grant a stay that was not authorized by § 9545(c), because it has already exercised that power in this case." Brief for Appellee, 6. That assessment is beyond cavil.

In my view, this Court has the inherent power to grant a stay in **any** case in order to properly perform our constitutional duty. But, the contours of the power cannot be divorced from the case in which it is requested to be exercised. In this case, the General Assembly has specifically spoken to the availability of a stay in one narrow context: litigation of a serial PCRA petition. As the Majority notes, we held in *Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721 (2001) (*Morris I*), that Section 9545(c) is "substantive in nature, not procedural, and thus, was a valid exercise" of legislative authority, and that the statute was constitutional. Op. at 167, 822 A.2d at 690. Since there is valid legislation controlling the matter, resort to this Court's inherent power is both unnecessary and inappropriate. The diluted standards offered up by appellant in place of those embodied in the legislative enactment wrongly assume that this Court may simply ignore valid legislation. In any event, the standard provided in the PCRA and explicated in *Morris I* is more than adequate to ensure the orderly consideration of serial PCRA appeals, and to identify those rare cases where a particular death warrant must be enjoined to permit review of the denial of a serial PCRA petition. This standard is also, in my judgment, more than adequate to vindicate this Court's inherent stay power in this context.

It is not an attack upon the independence of the judiciary for the General Assembly, which created a limited right to collateral review via the PCRA, and an even more limited right to pursue a serial PCRA petition such as this one, to pass substantive legislation which has the collateral effect of placing reasonable limitations upon this Court's inherent stay

power, in a case where a stay is requested to entertain an appeal from the denial of a serial PCRA petition. This modest and sensible restriction—if it can be said to be a restriction of this Court's inherent power at all rather than legislation effectuating that power—merely creates a theoretical possibility that a lawful sentence of death will be carried out in Pennsylvania. *See Sayres v. Commonwealth*, 88 Pa. 291, 307 (1879) ("If the legislature may fix no limitation whatever upon the issuing of such writs, it is not too much to say that capital punishment cannot be hereafter enforced in Pennsylvania"). The PCRA stay standard is particularly appropriate since it was "obviously adopted . . . from this Court's existing stay jurisprudence." *Morris I*, 771 A.2d at 746 (Castille, J. concurring). Thus, in fashioning the standard, the Assembly showed a measure of deference to this Court which we did not reciprocate when we issued our stay order.

The important preliminary question in the aftermath of our stay order is whether, in a system of separated powers such as that which undergirds our governing scheme, we **should** have entered the stay order on June 21, 2001. The Majority clearly recognizes this question, *see* op. at 174, 822 A.2d at 694 ("we must now consider whether the stay of execution was warranted"), but never answers it directly. Instead, the Majority decides the merits of the underlying appeal (*i.e.*, whether the PCRA court was correct in concluding that the serial PCRA petition was time-barred), and only then states "we cannot continue the stay in this matter" and vacates it. Op. at 182, 822 A.2d at 699. I would confront the predicate question directly and acknowledge that our previous order was erroneously entered, since Section 9545(c) controls and appellant never made the showing required by it to obtain the stay. This Court should not give the impression that years of reflection, and a full-blown opinion addressing the merits of the time-barred appeal, are required before this Court will rule upon a request for a stay of execution pending an appeal from the denial of a serial PCRA petition.

The bottom line here is that appellant was never entitled to a stay of execution—just as we held in *Morris I* that the

PCRA court lacked jurisdiction to negate the previous warrant of execution in December of 1999. *Morris I*, 771 A.2d at 742. And yet, Pennsylvania courts have stayed petitioner's execution for three and a half years, thereby delaying the prospect of this ancient judgment actually being carried out any time soon. I trust that this Court having now rejected the notion that we may grant a stay of execution upon some lesser, unprincipled standard, our decisions on Section 9545(c) stays in serial PCRA appeals will be more timely issued.

Turning from the question of the propriety of our previous stay order to the substance of the statutory stay standard, I do not join in the Court's *dicta* concerning possible exceptions to the statute arising from "inherent powers," as no such circumstance is presented here and the *dicta* inevitably will invite abuse in future cases. Op. at 165, 822 A.2d at 691. I do agree with the Majority that, in order to secure a stay of execution in connection with an appeal from the dismissal of a serial PCRA petition, the petitioner must make "a strong showing of likelihood of success on the merits." I note that the Majority's plain language approach is consistent with that set forth in my concurring opinion ·in *Morris I: i.e.*, the Majority applies the actual PCRA stay language, rather than invoking the test employed by federal courts construing federal habeas corpus appeal standards. *See Morris I*, 771 A.2d at 746–750 (Castille, J., concurring) (discussing distinction in purpose and meaning of standards). The Majority's decision in this regard is wise. A case recently decided by the U.S. Supreme Court demonstrates just how changeable and unpredictable the federal habeas appeal standard is. *See Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). As I noted in *Morris I*, it is preferable to follow the plain language of Section 9545(c), both because that is what the statute actually says, and because the language merely tracks this Court's *Process Gas* standard for the issuance of stays. *See Pennsylvania PUC v. Process Gas Consumers*, 502 Pa. 545, 467 A.2d 805 (1983). *See also Morris I*, 771 A.2d at 746 (Castille, J., concurring) (discussing *Process Gas* standard).

I also do not agree with the Majority in simply accepting appellant's characterization of *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). Op. at 171, 822 A.2d at 692. *Tyler* involved the federal habeas statute's restriction upon the filing of successive federal habeas petitions—a restriction that requires the petitioner to secure approval of the federal court of appeals before he may pursue a successive petition and which requires the federal appellate court to determine, within thirty days of the application, whether one of the two narrow exceptions to the ban on successive federal petitions has been met. 28 U.S.C. § 2244(b). *Tyler's* federal statutory interpretation does not involve any principle of federal law that binds this Court, nor does *Tyler* even speak to the distinct statutory interpretation issue before us. Certainly, appellant may forward to the General Assembly his rather simplistic equation that "(allegedly) complex issues should lead to a stay of execution as a matter of right" and seek to have the PCRA stay legislation amended accordingly. But nothing in Tyler's discussion of the federal habeas statute remotely supports the notion that this Court is obliged as a matter of federal law, or even as a matter of inherent power, to ignore the stay statute in favor of the proffered equation. Indeed, since *Tyler* upheld the federal construct requiring a serial federal habeas petitioner to make his showing in the stringent thirty-day statutory limit or be denied authority to pursue a successive petition, even as academic authority, the decision undercuts appellant's position.

Finally, on the question of whether appellant has satisfied any of the exceptions to the PCRA time-bar, I join the Majority Opinion, which holds that he has not and, accordingly, neither the PCRA court nor this Court has jurisdiction to entertain this serial PCRA petition.

Subject to the foregoing qualifications, I join the Majority Opinion.

JUSTICE SAYLOR CONCURRING.

I concur in the result, as I did in *Morris I*. My most substantial point of difference with these decisions is with the

majority's conclusion that a stay of execution is substantive in character, as opposed to procedural, for purposes of assessing the scope of the Court's exclusive rulemaking province under Article V, Section 10(c) of the Pennsylvania Constitution. This determination stands in sharp contrast with *Laudenberger v. Port Auth. of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), in which the Court treated a component of a civil damages award as procedural, rather than substantive. *See id.* at 66–67, 436 A.2d at 155. It would seem, at least to me, to be more rational to deem the maintenance of the status quo to be procedural and an affirmative award of relief substantive, *accord Allen v. Mellinger,* 567 Pa. 1, 13–14, 784 A.2d 762, 769 (2001) (Saylor, J., concurring); indeed, given the *Morris* and *Laudenberger* holdings in these regards, it is quite difficult for me to predict how the substantive/procedural dichotomy will be applied to various decisions made by the legislative and judicial branches in future contexts as they may arise.

Nevertheless, I am able to join the majority in approving Section 9545(c) of the PCRA, for reasons along the lines expressed in the opinion in support of reversal in *Gmerek v. State Ethics Comm'n,* 569 Pa. 579, 807 A.2d 812 (2002) (Saylor, J.). In short, and in my judgment, implementation of the General Assembly's present design for post-conviction review resides at the boundary between legislative and judicial power. Where the Legislature has proceeded in such circumstances, I have taken the position that a degree of comity is appropriate and deference due to such aspects of its design as may be deemed reasonable, although these may nonetheless have a procedural dynamic. *See id.* at 601, 807 A.2d at 826. I believe that the legislative prescription requiring a strong showing of a likelihood of success on the merits as a prerequisite to a stay of execution predicated on a second or subsequent post-conviction petition is a reasonable one. The Court must, of course, be diligent in ensuring the necessary review concerning whether such likelihood is present, in the face of an impending execution.