J-S03043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHEEM CROCKER | : | |
| | : | |
| Appellant | : | No. 284 MDA 2023 |

Appeal from the PCRA Order Entered January 20, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000186-1998

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED FEBRUARY 09, 2024**

Tysheem Crocker ("Crocker") appeals from the order entered by the York County Court of Common Pleas dismissing his sixth petition filed pursuant to the Post Conviction Relief Act ("PCRA")[1] without a hearing.[2]  Because the petition is untimely filed and Crocker failed to establish a time-bar exception, we affirm.

In a prior decision, this Court summarized the facts underlying Crocker's convictions as follows:

---

[1]  42 Pa.C.S. §§ 9541-9546.

[2]  Rule 907 of the Pennsylvania Rules of Criminal Procedure permits a PCRA court to dismiss a PCRA petition without a hearing if it finds "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings."  Pa.R.Crim.P. 907(1).

Crocker and Melvin Bethune ["Bethune"] were members of a gang in the York, Pennsylvania, area called "The Cream Team." Also in the York area was a rival gang called "The Gods." On October 5, 1997, following a dispute between the two groups, Crocker and Bethune traveled from York to New York to recruit manpower in order to retaliate against members of The Gods. The motivation for the retaliation was that members of The Gods had assaulted Bethune earlier that day.

Crocker and Bethune returned from New York with three individuals, including a man named "Corleone." This group and fellow Cream Team member Danny Steele ("Steele") went to the Super 8 Motel in York to plan the assault. The men decided they would shoot "Do-Work," who was the head of The Gods and whomever was with him. They planned to attack The Gods at its usual hangout on Maple Street.

Crocker and the others left the motel and drove to Maple Street. They parked their car and entered a home on Maple Street where they had stored guns. They retrieved their guns and proceeded to a corner where they had been advised members of The Gods were playing dice. Do-Work was playing dice along with a number of people including Raymond Clark ("Clark[]")[.]

Crocker and his co-conspirators approached. Crocker drew a gun on Do-Work and stated, "What's up now, yo?" N.T. Trial, 1/11/99, at 54. Crocker attempted to fire his gun at Do-Work, but it jammed. Immediately thereafter, other members of The Cream Team began firing at the people playing dice. The dice players ran, and Crocker's group chased them.

Steele, Corleone, and another unnamed co-conspirator chased Clark. Corleone shot Clark twice, fatally wounding him. Do-Work escaped. Crocker, Steele, and Bethune were all identified by witnesses as having been involved in the shootings and were arrested. Steele agreed to testify for the Commonwealth in return for unspecified consideration in the criminal proceedings against him. Bethune went to trial with Crocker for Clark's murder and was also found guilty of first-degree murder and conspiracy.

*Commonwealth v. Crocker*, 1539 MDA 2019, *1-2, 2020 WL 6149573 (Pa. Super. Oct. 20, 2020) (non-precedential decision) (citation and brackets omitted).[3]

On January 15, 1999, the trial court sentenced Crocker to the mandatory term of life in prison for the murder conviction and a concurrent term of twenty to forty years of incarceration for the conspiracy conviction. This Court affirmed his judgment of sentence and on September 5, 2000, our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Crocker*, 483 MDA 1999 (Pa. Super. Dec. 16, 1999) (non-precedential decision), *appeal denied*, 761 A.2d 548 (Pa. 2000).

In the years that followed, Crocker filed five PCRA petitions, none of which were found to warrant substantive relief. *See*, *e.g.*, *Crocker*, 2020 WL 6149573; *Commonwealth v. Crocker*, 346 MDA 2013 (Pa. Super. Aug. 1, 2014) (non-precedential decision); *Commonwealth v. Crocker*, 1104 MDA 2003 (Pa. Super. May 11, 2004) (non-precedential decision), *appeal denied*, 868 A.2d 1197 (Pa. 2005); *Commonwealth v. Crocker*, 1392 MDA 2001 (Pa. Super. Aug. 12, 2002) (non-precedential decision).[4]

_____

[3] Co-defendant Bethune has also filed an appeal at 283 MDA 2023 from the denial of his fourth PCRA petition.

[4] Crocker also filed a petition for writ of habeas corpus in federal court. *See Crocker v. Klem*, Civ. No. 3:CV-03-1718 (M.D.Pa. Dec. 9, 2008). The federal district court denied relief, and the Court of Appeals for the Third Circuit affirmed. *Crocker v. Klem*, 450 F. App'x. 136 (3d Cir. Nov. 4, 2011).

On January 28, 2022, Crocker, through privately retained PCRA counsel, filed the instant PCRA petition, his sixth. The PCRA court issued notice of its intent to dismiss Crocker's petition without a hearing pursuant to Pa.R.Crim.P. 907, finding it untimely and that Crocker failed to establish an exception to the PCRA's timeliness requirements. Crocker filed objections to the Rule 907 notice pro se. On January 20, 2023, the PCRA court denied the sixth petition.[5] This appeal followed.[6]

Crocker presents six questions for our consideration, but as he tacitly recognizes in his brief, the threshold question we must address is whether Crocker's sixth PCRA petition was timely filed or, alternatively, satisfies an exception to the statutory time bar. **See Commonwealth v. Fantauzzi**, 275

---

[5] Crocker filed pro se a motion to modify the PCRA court's denial of his sixth petition. The PCRA court denied his request as well as his pro se objections to the Rule 907 notice because Crocker was represented by counsel. PCRA Court Order, 2/14/2023, at 1. **See also Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (explaining that generally, hybrid representation is not permitted in Pennsylvania and pro se motions filed when a petition is represented by counsel are legal nullities).

[6] On February 13, 2023, PCRA counsel sought to withdraw as counsel in the PCRA court. Petition to Withdraw as Counsel, 2/13/2023. The PCRA court denied the petition because counsel had not filed a notice of appeal or attached a signed statement from Crocker indicating he understood his rights and did not wish to appeal the dismissal of his sixth PCRA petition. PCRA Court Order, 2/13/2023. After PCRA counsel filed the instant appeal on February 17, 2023, the PCRA court granted counsel's second petition to withdraw. PCRA Court Order, 2/24/2023. Crocker is presently represented on appeal by different, privately retained PCRA counsel, who entered his appearance in this Court on August 11, 2023. Entry of Appearance, 8/11/2023.

A.3d 986, 994 (Pa. Super. 2022) ("the timeliness of a PCRA petition is jurisdictional and [] if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief"). "As the timeliness of a PCRA petition is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Callahan***, 101 A.3d 118, 121 (Pa. Super. 2014) (citation omitted). We therefore need not afford any deference to the PCRA court's legal conclusions. ***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016).

A petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final unless that petition alleges, and the petitioner proves, that an exception to the time limitation is met. 42 Pa.C.S. § 9545(b)(1). The exceptions to the one-year time bar include:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). A PCRA petition invoking a statutory exception must be filed within one year of the date the claim could have been

presented. *Id.* § 9545(b)(2). Additionally, to be eligible for PCRA relief, the petitioner must plead and prove that the allegation of error has not been previously litigated or waived. *Id.*, § 9543(a)(3). An issue has been previously litigated if "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." *Id.*, § 9544(a)(3).

Crocker's judgment of sentence became final on December 4, 2000, after our Supreme Court denied Crocker's petition for allowance of appeal and the time to seek certiorari with the United States Supreme Court expired. 42 Pa.C.S. § 9545(b)(3). To be timely, Crocker's petition would have to have been filed by December 4, 2001; thus, the instant petition, filed on January 28, 2022, is patently untimely.

In an effort to satisfy an exception to the timeliness requirement, Crocker implicates the governmental interference exception by asserting a *Brady*[7] violation. His argument centers upon the Commonwealth's failure to inform him that it interviewed the clerk who checked Crocker into the motel the night of the killing, Teri Flinchbaugh,[8] and its failure to turn over any notes of the interview or a folio of motel guest and phone records. Crocker's Brief at 5-6, 12, 18, 21-24; Crocker's Reply Brief at 1-2; PCRA Petition, 1/28/2022,

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

[8] She is now known as Teri Silar. To avoid confusion with the record, we refer to her as Flinchbaugh.

¶ 36 & Ex. A014-A015. Crocker asserts that he first learned of the alleged *Brady* violation in the investigator's November 29, 2021 report. Crocker's Brief at 24. He argues that this information was material to his defense because it would have shown that Crocker was not at the motel at the time of the conspiratorial meeting to plan the murder. Crocker's Brief at 12, 18, 21-24; Crocker's Reply Brief at 4-5.

The law is clear that a *Brady* violation may fall under the governmental interference exception to the PCRA's time bar. *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008). A petitioner seeking relief in an untimely PCRA petition based upon a *Brady* violation "must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Id.* (citation omitted).[9] "Due diligence

---

[9] We note, as Crocker does, that our Supreme Court has "acknowledge[d] that questions may endure about the appropriateness of a due diligence inquiry when analyzing timeliness under Section 9545(b)(1)(i) of the PCRA." *Commonwealth v. Towles*, 300 A.3d 400, 417 n.18 (Pa. 2023); *id.* at 418-21 (Donohue, J., concurring); *id.* at 421-22 (Wecht, J., concurring); *see also* Crocker's Brief at 29-33. At the time of this writing, however, it remains the law of this Commonwealth that a PCRA petitioner must plead and prove that knowledge of the Commonwealth's *Brady* violation could not have been obtained earlier with the exercise of due diligence. *Id.* at 413 n.14, 417 n.18; *Abu-Jamal*, 941 A.2d at 1268; *see also* Crocker's Brief at 30 (acknowledging our Supreme Court's precedent on this issue). Therefore, this Court must adhere to it. *Commonwealth v. Foley*, 38 A.3d 882, 892 (Pa. Super. 2012) (stating that the Superior Court "has a duty and obligation to follow the decisional law of the Supreme Court of Pennsylvania. The primary role of the
*(Footnote Continued Next Page)*

does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort" to obtain the information upon which a claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (citation and quotation marks omitted).

Thus, assuming (without deciding) the Commonwealth's failure to disclose the motel clerk's interview or turn over motel records constituted a *Brady* violation,[10] Crocker is not entitled to an indefinite period to raise the claim by invoking the government interference exception. Our review of the record reveals instances, dating back nearly twenty years, where Crocker pursued post-conviction relief based on what time Flinchbaugh worked on the night of the killing and when he checked into the motel. The record reflects that Crocker hired at least two private investigators, in addition to the private investigator noted in the instant petition, to obtain information relating to Flinchbaugh's shift on the night of the killing. The first was in 2003, which resulted in Crocker obtaining, inter alia, motel records relating to

_____

Superior Court is to apply existing law to the cases that come before us.") (internal quotation marks, brackets, and citations omitted).

[10] "In order for a defendant to establish the existence of a *Brady* violation, he must establish that there has been a suppression by the prosecution of either exculpatory or impeachment evidence that was favorable to the accused, and that the omission of such evidence prejudiced the defendant. *Commonwealth v. Morris*, 822 A.2d 684, 696 (Pa. 2003) (citation omitted). There is no *Brady* violation "where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." *Id.* (citation omitted).

- 8 -

Flinchbaugh's shift and the night audit report/guest folio on the night in question. Crocker's Rule 1925(b) Statement, 8/11/2003, ¶¶ 18.1-18.7, 20.1 & Exs. (Flinchbaugh's employee time record and night audit report/guest folio on night of killing).[11]

Crocker hired a second private investigator in 2007. *See* PCRA Petition, 8/20/2012, at 24, 26-28 & Ex. C. This investigator found and interviewed Flinchbaugh about her recollection of, and work schedule on, the night of the murder, including her review of motel records (employee time record, night audit report/guest folio, and registration card). *Id.* at Ex. C. Crocker's counsel received the investigator's report in 2007, which Crocker presented pro se to the PCRA court in his fourth PCRA petition, filed several years later in 2012. *Id.* at 24, 26-28 & Ex. C (asserting Flinchbaugh could not have checked Crocker into motel until after 11:00 p.m. on the night of the killing based on her employee time record and attaching the February 24, 2007 report of the private investigator).

---

[11] Crocker failed to raise this information in his third PCRA petition filed on May 16, 2003. Crocker attempted to raise it for the first time in his Rule 1925(b) statement filed in conjunction with his appeal of the denial of his third PCRA petition and this Court therefore found the claim was waived. *Crocker*, 1104 MDA 2003, at *9-10.

Notably, in Crocker's related federal case, the Court of Appeals for the Third Circuit stated that a "private investigator's letter to Crocker dated December 2, 2002, indicates that Crocker was pursuing information regarding the date and time he checked into the Super 8 Motel well before he filed his third PCRA petition on March 1[6], 2003." *Crocker*, 450 F. App'x. at 139.

The PCRA court granted Crocker a hearing on his fourth PCRA petition, which was held on January 22, 2013, and at which Crocker was represented by counsel. At the hearing, Crocker asserted, in pertinent part, a claim for relief based on the time he checked into the motel. In support thereof, Crocker provided Flinchbaugh's testimony, which had been taken at the PCRA hearing of co-defendant Bethune on March 1, 2010, wherein she testified that she always worked 11:00 p.m. to 7:00 a.m. as the night auditor and desk clerk and could not have checked anyone into the motel before 11:00 p.m. on the night of the murder. N.T., 1/22/2013, at Ex. 6 (N.T., 3/1/2010, at 12-23); *see also id.* at Exs. 4 (Report of private investigator relating to Flinchbaugh, 2/24/2007), 7 (Flinchbaugh's employee time record and night audit report/guest folio on night of killing).

The PCRA court denied relief on Crocker's fourth petition. PCRA Court Order, 1/22/2013. As it relates to Flinchbaugh, the court ruled, inter alia, that Crocker failed to establish a PCRA time-bar exception because he did not bring the claim within the required statutory timeframe from the date the claim could have first been presented as required by the PCRA. *Id.*; *see also* 42 Pa.C.S. § 9545(b)(2) (2012) (amended effective Dec. 23, 2018).

Crocker now claims that it was not until October 24, 2021 – more than eighteen years after he first interviewed Flinchbaugh – that he learned the Commonwealth had failed to disclose that it interviewed her prior to trial. PCRA Petition, 1/28/2022, ¶¶ 31-37, Ex. A014-015. In the instant PCRA

petition, Crocker provides no explanation of why he could not have discovered the Commonwealth's failure to disclose information related to its interview with Flinchbaugh sooner.[12] In his brief on appeal, Crocker asserts that he could not have discovered the alleged **Brady** violation sooner because of his lack of resources. Crocker's Brief at 35-36. As detailed hereinabove, however, Crocker hired multiple private investigators over the last twenty years who obtained motel records and/or interviewed Flinchbaugh. **See** PCRA Petition, 8/20/2012, Ex. C; Crocker's Rule 1925(b) Statement, 8/11/2003, ¶¶ 18.1-18.7, 20.1 & Exs. (Flinchbaugh's employee time record and night audit report/guest folio on night of killing). He fails to recognize, let alone address, the lengthy time gap between when he learned of Flinchbaugh's potential testimony and when he obtained a statement from her.

Further, Crocker concedes that he has almost continuously been in court – both state and federal – litigating serial petitions for collateral relief and that he previously raised newly discovered evidence claims related to the motel records and Flinchbaugh's testimony about her work schedule on the night of the murder. **Id.** at 35; Crocker's Reply Brief at 3. His attempt to recast this

_____

[12] Ordinarily, failure to raise a claim before the PCRA court results in waiver. **Commonwealth v. Washington**, 927 A.2d 586, 601 (Pa. 2007) ("Any claim not raised in the PCRA petition is waived and not cognizable on appeal."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). However, we find waiver unnecessary here given our resolution of the due diligence claim and the Commonwealth's failure to object to our consideration of this argument.

previously litigated argument as a governmental interference claim does not entitle him to relief. *See Commonwealth v. Bond*, 819 A.2d 33, 39 (Pa. 2002) (stating the well-settled law that a PCRA petitioner cannot obtain review of previously litigated claims by presenting new theories of relief to relitigate them).

Based on the record before us, we are unpersuaded that Crocker could not have learned of Flinchbaugh's interview with the prosecution earlier with the exercise of due diligence. As due diligence is required to establish a *Brady* claim, *Abu-Jamal*, 941 A.2d at 1268, we find no error in the PCRA court's conclusion that Crocker failed to meet the governmental interference exception set forth in section 9545(b)(i). We therefore affirm the PCRA court's order dismissing his sixth PCRA petition without a hearing.[13]

Application for remand denied. Order affirmed.

---

[13] On September 13, 2023, Crocker filed an application for remand in this Court. Crocker argues that counsel who represented him before the PCRA court had a conflict of interest arising from her dual representation of Crocker and Bethune. Application for Remand, 9/13/2023, at 4-6. Crocker argues that he and Bethune had diverging interests related to their most recent PCRA petitions, which he contends adversely impacted PCRA counsel's ability to establish an exception to the time bar. *Id.* at 9-13. Specifically, Crocker asserts PCRA counsel could not make a showing of Crocker's due diligence "without concurrently having to acknowledge that her other client, Bethune, was unquestionably prohibited from raising this claim." *Id.* at 11. Crocker sought remand for renewed PCRA proceedings without conflicted counsel or, alternatively, for a hearing on the conflict issue. We recognize that the PCRA court based its finding of no due diligence by Crocker on Bethune having raised the issue in a prior PCRA petition. PCRA Court Opinion, 3/31/2023, at 3. In light of our disposition, however, which is based solely on the record in Crocker's case, we deny Crocker's application for remand.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/09/2024